STATE of South Dakota, Plaintiff
and Appellee,

v.

Melvin GREY OWL, Defendant
and Appellant.

No. 13338.

Supreme Court of South Dakota.

Considered on Briefs Oct. 2, 1981.

Decided March 10, 1982.

LeAnn Larson Finke, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.

Max A. Gors of Maher, Gors & Dean, Pierre, for defendant and appellant.

HENDERSON, Justice.

## ACTION

Melvin Grey Owl (appellant) appeals from a judgment of conviction, based on a jury verdict, of attempted rape and attempted incest. We affirm.

## PROCEDURAL HISTORY

This case is before us for the second time. In *State v. Grey Owl*, 295 N.W.2d 748 (S.D. 1980) (hereinafter referred to as *Grey Owl I*) we reversed appellant's conviction of attempted rape and attempted incest because the trial court failed to instruct the jury with respect to the impeachment of the victim's testimony by a prior inconsistent statement.

Appellant was subsequently retried on the same charges. Again, the jury found appellant guilty as charged. The trial court sentenced appellant to five years imprisonment for the attempted rape conviction and one year imprisonment for the attempted incest conviction, the sentences to run concurrently. The judgment provided: " * * * and it is further ORDERED, that [appellant] be given credit for all days he has spent in the Hughes County Jail or the South Dakota State Penitentiary for prior proceedings relating to these offenses."

## FACTS

The facts elicited at trial were essentially the same as those set forth in *Grey Owl I* at 748–750. For purposes of this appeal, the following synoptical factual recitation is sufficient.

The victim is the niece of appellant. According to her testimony, appellant and his children were spending the night at her trailer home when, after retiring, she awoke to find appellant leaning over her. The victim was clad only in a summer shirt, although she testified that she was also wearing a pair of summer shorts when she fell asleep. According to the victim, appellant was naked during an attack upon her. She testified that appellant placed his knee between her knees and tried to get on top of her and implored her to accept his ad-

vances; that she struggled to get up and he then forcibly pushed her back down; and that she finally struggled free. The victim then fled to neighbors Arlette All Around and Ronnie McBride. These three then returned to the victim's trailer but found no sign of appellant. The police were called and an inspection of the interior of the victim's trailer was made. Appellant was once again not found.

Appellant pleaded an alibi defense. Thelma Grey Owl, appellant's sister, testified that appellant had spent the night in her home (which was located approximately 46 miles from the victim's trailer) and was with her at the time the victim was allegedly attacked. Ms. Grey Owl also testified that appellant and his children arrived at her home a few minutes past 11 p.m. the night in question, while the victim testified that the attack occurred at approximately 12:30 a. m.

At trial, appellant's niece testified that the victim had told her that it was not true that appellant had tried to rape her. The victim admitted making this statement in an attempt to squelch any gossip pertaining to the incident.

## ISSUES

### I.

Did the retrial of appellant on the charge of attempted incest violate his constitutional right against double jeopardy? We hold that it did not.

### II.

Was there sufficient evidence presented at trial to support the verdict of the jury? We hold that there was.

### III.

Did the trial court err by refusing certain jury instructions submitted by appellant? We hold that it did not.

## DECISION

### I.

Appellant contends that the trial court erred by denying his motion to dismiss the attempted incest charge due to the completion of his sentence for that crime, as per the original judgment. On September 27, 1979, at the conclusion of the trial in *Grey Owl I*, appellant was sentenced to one year for attempted incest and immediately thereafter began his period of incarceration. This Court reversed appellant's conviction on September 3, 1980. Under SDCL 24–5–1,[1] then, appellant had served his time of imprisonment under the attempted incest conviction at the time his conviction was overturned.

Double jeopardy is the basis of appellant's contention. The United States Constitution, Amend. V, provides that "[n]o person shall ... be subject for the same offense to be twice put in jeopardy of life or limb[.]" Article VI, § 9 of the South Dakota Constitution provides: "No person shall ... be twice put in jeopardy for the same offense." Although this Court reversed appellant's conviction in *Grey Owl I*, this does not prevent the State from retrying him on the same charges. *United States v. Ball*, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896); *accord United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); *State v. Percy*, 81 S.D. 519, 137 N.W.2d 888 (1965).

■ The constitutional guaranty against double jeopardy does three things: (1) it protects against a second prosecution for the same offense after acquittal, *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957); (2) it protects against a second prosecution for the same offense after conviction, *In re Nielsen*, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889); and (3) it protects against multiple punishments for the same offense, *United States v. Benz*, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931). It is this third double jeopardy prohibition which appellant argues prevents the State from retrying him for attempted incest.

Appellant maintains that the United States Supreme Court has impliedly held that a defendant may not be retried for an offense when, under the original conviction, he has completely satisfied the sentence for that particular crime. The language appellant relies upon is found in *United States v. Ewell*, 383 U.S. 116, 121, 86 S.Ct. 773, 777, 15 L.Ed.2d 627, 631 (1966), wherein the Court stated: "It has long been the rule that when a defendant obtains a reversal of a prior, unsatisfied conviction, he may be retried in the normal course of events."

Three years later the U. S. Supreme Court expounded upon this area more fully in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). In *Pearce*, the Court stated (footnote omitted):

> We think it is clear that this basic constitutional guarantee [of double jeopardy] is violated when punishment already exacted for an offense is not fully "credited" in imposing sentence upon a new conviction for the same offense.
>
> . . . .
>
> We hold that the constitutional guarantee against multiple punishments for the same offense absolutely requires that punishment already exacted must be fully "credited" in imposing sentence upon a new conviction for the same offense.

*Id.* at 718–719, 89 S.Ct. at 2077, 23 L.Ed.2d at 665. Here, the trial court specifically gave appellant credit for the time he had already served in prison.

■ Upon retrial, it is permissible to impose a greater sentence on reconviction of a defendant than was imposed on the original

---

1. SDCL 24–5–1 provides:

   Every convict sentenced for any term less than life, and subject to the provisions of §§ 24–2–17 and 24–2–18, shall be entitled to a deduction from his sentence for each year and pro rata for any part of a year as follows: for the first two years, a deduction of two months each year; for the third year, three months; for the fourth year and to the tenth, four months for each year; for the tenth year and for each year thereafter until the expiration of the period of the sentence as pronounced by the court, six months for each year.

conviction provided that there are legitimate reasons for the increase, such as an unfavorable prison record or an updated pre-sentence investigation.[2] *North Carolina v. Pearce*, supra; *see also Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949).

■ Even though appellant was sentenced to serve the same term of imprisonment on the attempted incest conviction as imposed in *Grey Owl I*, under the applicable statutes he could have received a prison sentence of five years upon reconviction. SDCL 22–4–1(1); SDCL 22–22–19; SDCL 22–6–1(5). Any increase in sentence, of course, would have had to comply with the provisions of *North Carolina v. Pearce*, supra, and *Williams v. New York*, supra.

Hence, we hold that appellant was not subjected to double jeopardy due to the potential increase in sentence which the trial court could have imposed when appellant was reconvicted of attempted incest plus the fact that he was fully credited for the time he had already served on this charge.

## II.

Appellant secondly contends that the uncorroborated testimony of the victim was insufficient to sustain the jury's guilty verdict because the victim's testimony was improbable and fairly impeached. Essentially, appellant argues that there was insufficient evidence to support the verdict.

In determining the sufficiency of evidence on appeal the test is whether or not there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilty beyond a reasonable doubt. In making this determination, this court will accept that evidence and the most favorable inferences that can be fairly drawn therefrom which will support the verdict.

*State v. Wilson*, 297 N.W.2d 477, 480 (S.D. 1980); *see State v. Lien*, 305 N.W.2d 388 (S.D.1981); *State v. Brammer*, 304 N.W.2d 111 (S.D.1981).

■ In South Dakota it is not essential to a sexual offense conviction that the testimony of the victim be corroborated by other evidence. *State v. Goff*, 86 S.D. 354, 195 N.W.2d 521 (1972); *see also* SDCL 23A–22–15.1. The exception to this principle is stated in *State v. Dachtler*, 43 S.D. 407, 411, 179 N.W. 653, 653 (1920), cited with approval in *State v. Fulks*, 83 S.D. 433, 160 N.W.2d 418 (1968):

[A] person may be convicted of the crime of rape upon the uncorroborated testimony of the complaining witness, yet . . . this cannot be rightfully done where, from the whole record, it appears that such testimony is unreliable, improbable, or where such witness has been fairly impeached[.]

There is no doubt that the victim's testimony in this case was impeached. Accordingly, the testimony of the victim must be corroborated to create sufficient evidence for the case to be submitted to the jury.

■ Several witnesses testified to circumstances which support the victim's testimony, even though none of these witnesses saw appellant, his children, or his car the night of the incident.

[I]t is not essential that the prosecutrix be corroborated by other witnesses as to the particular acts which constitute the offense. It is sufficient if she is corroborated as to material facts and circumstances which tend to support her testimony as to the principal fact in issue.

*State v. Ferguson*, 188 Neb. 330, 332, 196 N.W.2d 374, 376 (1972).

According to the victim, her young daughter Chastity stated to her, Arlette All Around, and Ronnie McBride when they returned to the trailer after she (the victim) had fled: "Oh, I thought you was Grandpa again" and "Grandpa's car went up towards Oscar's." Investigating Officer Mike Sines testified that the bed in the rear bedroom

**2.** Due to the applicable sentencing structure, a defendant in Missouri, however, may not be retried and sentenced to death if his original conviction for the same offense did not impose the death penalty. *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 70 L.Ed.2d 270 (1981).

of the victim's trailer was "messed up . . . as though it appeared that someone had been sleeping in there[.]" Also, Officer Sines testified that a young boy was sleeping on the couch in the living room. Both of these testimonial observations coincided with the victim's testimony.

The evidence is undisputed that the victim informed Ms. All Around, McBride and the police of the incident immediately subsequent thereto. Evidence of a prompt complaint by the victim is considered corroborative evidence. *State v. Campbell*, 217 N.W.2d 251 (Iowa 1974); *State v. Ferguson*, supra. The emotional state of the victim when she reported the incident is also corroborative of her testimony. *State v. Campbell*, supra; *State v. Grady*, 183 N.W.2d 707 (Iowa 1971). Several witnesses testified with regard to the victim's distraught emotional condition immediately subsequent to the incident. The victim testified that appellant was at her trailer— late—the night in question. In essence, appellant's alibi defense narrows down to an alibi concerning hours. The jury determines the credibility of the witnesses and they simply disbelieved appellant's alibi.

Concluding that the victim's testimony was neither unreliable nor improbable, and having deliberated on the impeachment, and having considered all the evidence presented, the jury found appellant guilty as charged. In light of all of these factors, we believe that there existed ample corroboration of the victim's testimony to allow the jury to consider the evidence and, in conjunction with the aforementioned principles of review, we hold that the verdict is supported by sufficient evidence.

### III.

Appellant maintains that the trial court erred by refusing his proposed jury instruction on corroboration of the victim's testimony. The two specific instructions in question provided:

[APPELLANT'S PROPOSED INSTRUCTION # 3] Where, from the whole record, it appears that the victim's testimony is unreliable, improbable, or where the victim has been fairly impeached, then the Defendant cannot be convicted upon the uncorroborated testimony of the victim.

[APPELLANT'S PROPOSED INSTRUCTION # 4] Corroboration of the victim's testimony is not sufficient if it merely shows the commission of the offense or circumstances thereof. She must be corroborated by some other evidence that connects the Defendant with the commission of the offense.

With regard to proposed instruction # 3, we held in *State v. Fulks*, supra, that the corroboration exception provided for in *State v. Dachtler*, supra, was not a matter for jury determination but rather designed to provide a standard in testing the sufficiency of evidence for submission of a particular case to the jury; this standard is also used to aid the trial court in determining the propriety of a new trial, and for judicial review. Thus, the trial court properly rejected appellant's proposed instruction # 3.

Proposed instruction # 4 is simply a corollary of proposed instruction # 3. It likewise would have allowed the jury to consider matters that are within the sole province of the trial court. *State v. Fulks*, supra. The rejection of this instruction was not erroneous.

The judgment of the trial court is affirmed.

WOLLMAN, C. J., and MORGAN, J., concur.

DUNN and FOSHEIM, JJ., dissent.

DUNN, Justice (dissenting).

The majority opinion outlines the proper law of the case but reaches the wrong conclusion.

There is no evidence in this record which could possibly rise to the level of being corroborative of the victim's thoroughly impeached testimony. No witness saw appellant, his children or his car at the victim's trailer near the time of the alleged attempted rape. Even the victim's children

who were in the trailer at the time of the incident, including her son Junior who was sleeping in the same bed as the victim, did not testify to appellant's presence.

Evidence that the rear bedroom of the victim's trailer was "messed up ... as though it appeared that someone had been sleeping in there" corroborates only the fact that the bed was not made. The evidence that a young boy was sleeping on the couch in the living room is corroborative of nothing. Finally, the statements of Chastity about "Grandpa" which were made after the victim's return to the trailer, and where the child admittedly was not awake and a witness to the alleged attempted rape, could only refer to the visit of "Grandpa" some two hours earlier in the evening.

The majority opinion also relies on evidence of a prompt complaint and of the emotional state of the victim as corroboration of the victim's testimony. The Iowa Supreme Court in *State v. Campbell*, 217 N.W.2d 251, 253 (Iowa 1974) noted, however, that evidence of prompt complaint and emotional state "alone would not be sufficient [corroboration] since it does not tend to connect defendant with the crime[.]" The court in *Campbell* found sufficient corroboration of the victim's story only in light of the discovery of defendant's shorts in the victim's bedroom, the defendant's uncertainty when being questioned about the rape charge, and a telephone conversation in which the victim's husband was assured that defendant would leave the state if he was left alone. In the case before us, we do not have any corroborative evidence that tends to connect appellant with the crime.

The Iowa Supreme Court has also held that when the record is void of corroborative evidence which places the alleged assailant near the scene of the crime at the time in question, of the assailant's flight, or of incriminating evidence found on the assailant or at the scene of the crime, then evidence of a prompt complaint and of the emotional state of a victim is insufficient to submit the matter to the jury for consideration. *State v. Taylor*, 222 N.W.2d 439 (Iowa 1974). Just as in *Taylor*, there is no evidence here placing appellant near the victim's trailer at the time of the crime, no evidence of flight, and no incriminating evidence found at the scene of the crime. In fact, the victim claims to have thrown appellant's shorts onto the floor during the struggle and even the shorts were not found at the scene of the crime.

All the evidence introduced in this case results from the victim's own statements or actions. The evidence includes her story of the alleged attempted rape, her emotional distress after the incident, and her prompt report of the incident. Her testimony was impeached by a prior inconsistent statement. Furthermore, she admitted on cross-examination that she had asked appellant to borrow one hundred dollars to purchase a car earlier that evening and he had refused to lend her the money. Without corroborating evidence to connect appellant with the crime, as a matter of law the court should have entered a directed verdict for appellant.

I am authorized to state that Justice FOSHEIM joins in this dissent.