**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Timothy Owen REE, Defendant and Appellant.**

**No. 13756.**

Supreme Court of South Dakota.

Argued Nov. 15, 1982.

Decided March 23, 1983.

Rehearing Denied April 19, 1983.

Curtis G. Wilson, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Richard Braithwaite, Sioux Falls, for defendant and appellant.

MORGAN, Justice.

Timothy Owen Ree, appellant (Ree), appeals from his conviction for sexual contact with a child under fifteen years of age. We affirm.

Ree was charged with rape in the third degree and sexual contact with a child under fifteen years of age (sexual contact) when on November 21, 1981, he was found hiding in a closet off a bedroom in which a thirteen-year-old girl (Francine) was on the bed, clad only in a shirt with a blanket over her. This discovery was made by Francine's mother and her boyfriend when they returned home from a downtown bar and entered the bedroom. Further details of Ree's conduct will be discussed where appropriate to dispose of the issues.

At trial, at the close of the State's evidence, the trial court dismissed the rape charge and submitted the sexual contact charge to the jury, which returned a verdict of guilty. Ree was sentenced to serve three years in the State Penitentiary.

On appeal Ree raises three issues, two of which go to the sufficiency of the evidence and a third to the propriety of an instruction. We will consider the sufficiency of the evidence issues first.

Ree was charged under SDCL 22–22–7 which reads:

Any person, fifteen years of age or older, who knowingly engages in sexual contact with another person, other than

his spouse when such other person is under the age of fifteen years is guilty of a Class 4 felony. If the actor is less than three years older than the other person, he is guilty of a Class 1 misdemeanor.

Ree's contention is that the State failed to prove by competent evidence that he was at least three years older than Francine so that the offense constituted a felony.

The evidence to establish Ree's birthdate consisted principally of a document denominated a Complaint Record of one Timothy Owen Ree, which showed his date of birth (d.o.b.) to be 11–20–58. This record had been prepared in 1975. The record was offered and received into evidence under SDCL 19–16–12 as a public document exception to the hearsay rule. Foundation for the report was laid by the testimony of the officer who had prepared the report, who testified that Ree had stated to him that he was born on November 20, 1958.

SDCL 19–16–12, which embodies Federal Rules of Evidence 803(8), provides:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth
>
> (1) the activities of the office or agency, or
>
> (2) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or
>
> (3) in civil actions and proceedings and against the state in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law,

are not excluded by § 19–16–4, even though the declarant is available as a witness, unless the sources of information or other circumstances indicate lack of trustworthiness.

Ree contends that the foundation was defective because the d.o.b. was not "observed pursuant to duty imposed by law as to which matters there was a duty to report," inasmuch as his d.o.b. was not "observed" by the individual completing the Complaint Record.

While Weinstein's Evidence states that personal knowledge should be required under F.R.E. 803(8)(b), 4 Weinstein's Evidence ¶ 803(8)[02] at 803–196 (1981), this requirement apparently does not preclude admittance of "routine matters" noted on records. *United States v. Grady,* 544 F.2d 598 (2d Cir.1976), 37 A.L.R.Fed. 819 (N.Y.Crt. App.1976); Annot., 37 A.L.R.Fed. 831 (1978). In *United States v. Grady,* the court, pursuant to F.R.E. 803(8)(b) admitted reports containing serial numbers of firearms for the limited purpose of showing that those weapons were found in Northern Ireland on certain dates. That court stated that the reports did not concern observations of commission of crimes by police, but rather simply related to the "routine function" of recording serial numbers.

F.R.E. 803(8) seeks to preclude admittance of a record tending to prove the prosecution's case since it would deprive the defendant of cross-examination. Thus, this rule is primarily concerned with recordings of an officer's "first hand observation of a crime." Annot., 37 A.L.R.Fed. at 835. As in *Grady,* however, the record in the present case does not show an observation of a crime; rather the record includes data related to a "routine function." In *Grady,* the routine function was listing serial numbers of firearms. In the present case, the routine function was the listing of a birthdate on a juvenile record. Accordingly, the juvenile Complaint Record was properly admitted.[1]

---

[1]. *United States v. Harris,* 446 F.2d 129 (7th Cir.1971), *cert. denied* 404 U.S. 994, 92 S.Ct. 533, 30 L.Ed.2d 546 (1971), provides additional support for admitting the Complaint Record. In *Harris,* the defendant was convicted for failing to report for civilian, in lieu of military service on the basis of a letter from a state hospital stating that he had failed to appear. According to Weinstein's Evidence,

> "*Harris* was soundly decided. It seems clear that the defendant never challenged the accuracy of the letter stating that he did not report .... It is true that in criminal cases the burden is on the government and the defendant need produce no evidence. But

■ Ree next contends that the evidence was insufficient to convict him of sexual contact because the evidence failed to show a touching of Francine's genitalia. At the time of this incident, SDCL 22–22–7.1 defined the term "sexual contact" as used in SDCL 22–22–7 to mean, "any touching, not amounting to rape, of the breasts of a female or the genitalia of any person with the intent to arouse or gratify the sexual desire of either party." Ree points to the child's reluctance and lack of response in her testimony to perhaps indicate that a "sexual contact" did not occur. The State points out that it is clearly understandable that Francine, who at the time of trial was fourteen years old, would be hesitant about testifying as to such an attack.

In *State v. Grey Owl,* 316 N.W.2d 801 (S.D.1982), this court stated the status by which this court reviews the sufficiency of the evidence.

> In determining the sufficiency of evidence on appeal the test is whether or not there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilty beyond a reasonable doubt. In making this determination, this court will accept that evidence and the most favorable inferences that can be fairly drawn therefrom which will support the verdict.

316 N.W.2d at 804 quoting from *State v. Wilson,* 297 N.W.2d 477 (S.D.1980); *see State v. Lien,* 305 N.W.2d 388 (S.D.1981); *State v. Brammer,* 304 N.W.2d 111 (S.D. 1981).

When the fourteen-year-old prosecution witness was called to the witness stand she showed some hesitancy about relating in detail the intimate facts of the encounter. She testified that she knew what her genitals and vagina are. When asked where Ree touched her she responded, "between the legs," but was unable to be more specific. After a short recess and conference between the deputy state's attorney and the witness, the following testimony was elicited:

Q (BY MRS. BREKKE) I know this is really hard for you, Francine, because I'm asking you such minor, minor details. But, we have to have you be more specific and you've got to tell us. You said that the defendant touched you between the legs. We need to know more specifically where and what kind of touching, if any.

A He tried to stick his fingers in my vagina.

Q Did he ever get his fingers in your vagina?

A I don't know.

Q When you say you don't know—does—what do you mean by you don't know?

A I don't remember. I don't know.

The issue here is merely whether there was a touching of the genitals, not whether Ree succeeded in putting his finger into her vagina. Only a mere touching is necessary. SDCL 22–22–7.1. Considering the testimony detailed above, in a light most favorable to the jury's verdict, it is sufficient to support the conviction of sexual contact.

■ Finally, Ree complains that the trial court deleted a portion of one of his requested instructions to the jury. The instruction as proposed, with the deleted portion underlined, is as follows:

> *The charges against the defendant are one which, generally speaking, are easily made, and once made are difficult to disprove—even if the defendant is innocent—and even though he has no duty to disprove them.*

> From the nature of a case such as this the complaining witness usually is the

even in criminal cases—and particularly in non-jury trials—wasting time on non-contested issues seems unwarranted." 4 Weinstein's Evidence ¶ 803(8)[02] at 803–198 (1981).

In the present case, Ree has not challenged the accuracy of the birthdate. That November 28, 1958 is his birthdate is not contested. Although the burden is on the State to prove Ree's birthdate, and he contests the evidence used to prove the information, Ree does not contest the accuracy of the information.

only witness for the prosecution testifying directly as to the alleged acts constituting the crimes. Therefore, the law requires that you examine the testimony of the prosecuting witness with caution and consider and weigh it in the light of all the circumstances shown.

In giving this instruction, the court does not mean to imply an opinion as to the credibility of any witness or the weight to be given his or her testimony.

The trial court gave the balance of the instruction. Ree contends that the trial court erred under our decision in *State v. Fulks,* 83 S.D. 433, 160 N.W.2d 418 (1968), although he does not equate such error with a violation of his constitutional rights.

In *Fulks,* the appellant objected to the trial court giving a somewhat similar instruction, claiming that a portion of it violated his fifth amendment rights against self-incrimination. The *Fulks* instruction, with the part objected to underlined, was as follows:

It is not essential to a conviction in this case that the testimony of the prosecuting witness be corroborated by other evidence provided that from all the evidence you are convinced beyond a reasonable doubt and to a moral certainty of defendant's guilt. However, a charge such as that made against the defendant in this case is one which, generally speaking, is easily made, and once made difficult to disprove even if the defendant is innocent.

*From the nature of a case such as this the complaining witness and defendant are usually the only witnesses to the actual act or acts constituting the crime.* Therefore, you are instructed that the law requires that you examine the testimony of the prosecuting witness with caution.

83 S.D. at 438, 160 N.W.2d at 421.

As will be noted, the language deleted by the trial court below was in substance included in the undisputed portion of the *Fulks* instruction. In *Fulks,* this court, in discussing the instruction as a whole, made two general statements. The first, that such a cautionary instruction is ordinarily given in sexual crimes when the victim is the prosecuting witness. The second, that such instruction is generally considered mandatory where the conviction may be sustained on the uncorroborated testimony of the complaining witness. These bare statements in the decision were not supported by any citations of authority.

More recently, in *State v. Reiman,* 284 N.W.2d 860 (S.D.1979), an instruction similar to that which Ree proposed was likewise refused by the trial court. On review, we reiterated the general statement from *Fulks, supra,* noted above, but pointed out that in view of the considerable amount of corroboration, medical testimony, physical evidence and the defendant's admissions to being at the scene, the conviction need not be sustained on the uncorroborated testimony of the complaining witness and therefore the proposed instruction was unnecessary.

On the record before us, in this case, we can rest our decision on *Reiman, supra.* While the volume of corroboration might not be as great as was the case in *Reiman,* it certainly exceeds that found by the majority of this court in *State v. Grey Owl, supra.* Here, Francine testified that Ree grabbed her hair and pulled her upstairs and into the bedroom. When she tried to escape he threw her back onto the bed and took off her jogging pants and underpants. In the meantime, Ree had unbuckled his belt and unzipped his pants. Her testimony of the act of contact has been detailed under the second issue. Corroboration came from the testimony of Francine's mother and the mother's boyfriend who returned home and went into the bedroom and found Francine lying in the bed disrobed below the waist and found Ree hiding in the adjoining closet. We hold this to be ample corroboration to negate the necessity for giving the instruction or any part thereof.

█ We do not leave the issue there, for the State suggests that we review our *Fulks* decision on the propriety of the in-

struction. Other states have done so and several have abrogated it.[2]

The portion of the first paragraph most often objected to is the last sentence thereof which finds its genesis in a statement made by Sir Matthew Hale (1 Pleas of the Crown, 1st American Edition 634) in his discussion of proof of rape, and it is as follows: "It is true, rape is a most detestable crime, and therefore ought severely and impartially to be punished with death; but it must be remembered that it is an accusation easily to be made and hard to be proved and harder to be defended by the party accused, though never so innocent." The principal complaint against the first paragraph of the instruction is that it constitutes a comment on the evidence. The second paragraph is attacked on the grounds that it applies a stricter test of credibility to the victim than to other witnesses in the trial and it applies a stricter test of credibility to victims of sex crimes than to the victims of other crimes. With these contentions we agree. We are not unmindful of the provisions of SDCL 23A–22–15.1 which requires "[t]he testimony of the complaining witness in a trial for a charge of rape shall not, merely because of the nature of that charge, be treated in any different manner than the .testimony of a complaining witness in any other criminal case." The *Fulks* instruction clearly flies in the face of this statutory admonition. Since rape and sexual contact are so closely akin, we see no reason to vary the treatment of the complaining witness.

Further, the instruction is not in keeping with the statutory changes of the crime of rape. As noted in *State v. Havens,* 264 N.W.2d 918 (S.D.1978), the crime was formerly defined primarily in terms of the conduct of the victim. "The actor's conduct became criminal only if the victim's conduct met the defined requirements." *Id.* at 920. "We hold that the 1975 enactment of the South Dakota Legislature repealing and re-enacting SDCL 22–22–1 was intended to

modernize the rape statute to place the act in a proper perspective and to try the actor for the crime, not the victim." *Id.* at 921. Again, we see no reason to vary the treatment of the complaining witness in a sex contact case. At the same time, the rape statutes were modernized, 1975 S.D.Sess.L. ch. 169, §§ 1–5; 1976 S.D.Sess.L. ch. 158, § 22–1, the legislature changed the indecent molestation statutes to sexual contact. 1976 S.D.Sess.L. ch. 158, § 22–3. Thus, to apply a stricter test of credibility to the victim than to other witnesses in the trial is clearly against the modern trend which the legislature has set.

In *State v. Feddersen,* 230 N.W.2d 510, 515 (Iowa 1975), the Iowa Supreme Court said, "[w]e believe it is wrong to do this just as it is wrong to apply a stricter test of credibility to the defendant than to other witnesses." As early as *State v. Smith,* 8 S.D. 547, 67 N.W. 619 (1896), this court condemned singling out the defendant or his codefendants for special consideration. In *Smith,* the portions of the instructions excepted to are as follows:

You are instructed that under the statutes of this state a defendant in a criminal case may be a witness in his own behalf. But you are further instructed that it is your duty to take into consideration, in weighing his testimony, the fact that he stands charged with the commission of the crime; that the result of the case under consideration is to him of the most vital importance; and, bearing this in mind, you are to give to his evidence such weight and credence as, in your sound judgment, you may consider it entitled to.

8 S.D. at 552, 67 N.W. at 621. Further, "[i]t is the duty of the jury to take into consideration the interest of the defendant and his co-defendants, and the natural interest or sympathy of his relatives, or the relatives of his co-defendants or his and their friends." 8 S.D. at 552, 67 N.W. at 621. The court went on to point out that:

2. *See State v. Settle,* 111 Ariz. 394, 531 P.2d 151 (1975); *People v. Rincon-Pineda,* 14 Cal.3d 864, 123 Cal.Rptr. 119, 538 P.2d 247 (1975); *State v. Smoot,* 99 Idaho 855, 590 P.2d 1001

(1978); *Taylor v. State,* 257 Ind. 664, 278 N.E.2d 273 (1972); *State v. Feddersen,* 230 N.W.2d 510 (Iowa 1975).

Evidence cannot be weighed, by persons of ordinary intelligence and experience, without giving attention to the evident feelings and interest of witnesses. It is always proper for trial courts to remind jurors of their duty in this respect, but we cannot commend the manner in which it was done in this case. They should have been directed to consider the interest, if any, as shown by the evidence, of each witness, without specifying any particular person or class of persons, and to give to the testimony of each such weight as the jurors believed it entitled to, in view of all the evidence. The testimony of each witness should be subjected to the same test, and the court should studiously avoid any expression calculated to discredit any particular portion of the testimony.[3]

8 S.D. at 552–53, 67 N.W. at 621.

Accordingly, while we do not consider that giving the instruction constitutes any type of constitutional error as against the defendant, we determine that the trial courts should desist from further use of such instruction and recommend that the proper practice is to give a general credibility instruction applicable to all witnesses alike. To the extent that *Fulks, supra,* is inconsistent with this opinion on the issue of this jury instruction, we overrule *Fulks.*

The judgment of conviction of sexual contact is affirmed.

All the Justices concur.

---

**3.** In *State v. Smith,* 8 S.D. 547, 67 N.W. 619 (1896), and in several more recent cases such instructions, while perhaps erroneous, were found to be nonprejudicial. *See, e.g., State v. Pock,* 35 S.D. 393, 152 N.W. 507 (1915); *State v. Thornton,* 10 S.D. 349, 73 N.W. 196 (1897).