STATE of South Dakota, Plaintiff and Appellee,

v.

David BACHMAN, Defendant and Appellant.

No. 16381.

Supreme Court of South Dakota.

Argued April 25, 1989.

Decided Sept. 13, 1989.

Rehearing Denied Oct. 12, 1989.

Wade A. Hubbard, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on the brief.

Drew Johnson of Maloney, Kolker, Fritz, Hogan & Johnson, Aberdeen, for defendant and appellant.

MILLER, Justice.

David Bachman appeals his conviction for two counts of sexual contact with a child under sixteen years of age and two counts of rape. We affirm, holding that (1) there was sufficient evidence to support the jury verdicts on all four counts; (2) the trial court did not err in admitting into evidence expert testimony concerning rape trauma syndrome; and (3) the charges of rape and sexual contact are mutually exclusive.

### FACTS

Bachman met M.E. (mother of the victims) in 1985. Shortly thereafter, they began living together in Sturgis, South Dakota. Bachman later met A.E., J.E. and D.E., who were M.E.'s children by a previous marriage. In 1986, M.E.'s ex-husband allowed her to have summer custody of the children. Throughout that summer, Bachman was employed at a tourist attraction and M.E. worked nights at a nursing home in Spearfish. Bachman would return home from his job at 10:30 or 11:00 p.m., just prior to M.E.'s departure for work. Thus, Bachman was alone with the children during most nights.

During the summer, Bachman would take A.E., a 10–year–old girl, to the bedroom he shared with her mother. Once inside, he would either take A.E.'s clothing off or have her disrobe. Once undressed, Bachman would tie her to the bed with ropes and would attempt to have intercourse with her. On some occasions, he would tape her mouth shut with duct tape. On those occasions when he did not tape her mouth shut, he would have oral intercourse with her. According to A.E.'s testimony, Bachman also had anal intercourse with her. She further stated that this went on "almost every night" after the first two

weeks of the children's visit and happened "over thirty or forty" times. Bachman also forced himself on A.E.'s sister J.E., then age nine, in much the same manner. He would sometimes force A.E. to watch his activities with J.E. Bachman threatened to harm the girls' mother and brother, D.E., if they ever reported the molestations.

The girls and their little brother returned to their father in August. About a year later, A.E. recounted the molestations to her father's girl friend. A.E. was still too frightened to tell her father what had happened. J.E. also recounted a very similar story to her father's girl friend. The matter was ultimately reported to and investigated by the South Dakota Department of Social Services (DSS). A DSS social worker found that the girls' stories were very consistent. J.E. later related her story to an agent of the Division of Criminal Investigation (DCI). The girls were examined by a pediatrician in Sioux Falls, who found evidence of injury to J.E.'s hymen, which injury could have been caused by attempted penetration. The examination of A.E. revealed that she had a septate hymen so that it would be possible only to attempt intercourse with her. The pediatrician found no evidence of attempted anal penetration of either girl, but concluded that such evidence would be difficult to find since fourteen months had elapsed since the claimed molestations.

Bachman was charged with two counts of rape [1] and two counts of sexual contact with a child under sixteen [2] stemming from the girls' molestations. A Part II Information was filed, alleging that Bachman had been convicted of second-degree robbery in Brown County, South Dakota, in March 1977, and of felony theft in LaSalle County, Illinois, in November 1979.

The jury convicted Bachman on all counts. He then filed a stipulation for waiver of trial on Part II of the Information. The trial court sentenced Bachman to fifteen years on Counts 1 and 3 (sexual contact with A.E. and J.E.—SDCL 22–22–7), twenty-five years on Count 2 (rape of A.E.—SDCL 22–22–1(5)), and life on Count 4 (rape of J.E.—SDCL 22–22–1(4)). The fifteen and twenty-five-year sentences for Bachman's convictions on Counts 1, 2, and 3 were to run consecutively. His life sentence on Count 4 was to run concurrently with his other sentences.

## DECISION

### I

### WHETHER SUFFICIENT EVIDENCE EXISTED TO SUPPORT THE JURY'S VERDICT ON ALL FOUR COUNTS.

Bachman first claims that there was insufficient evidence to support the jury's verdict and that his motion for acquittal should have been granted. He bases his claim upon the fact that the victims' stories were "incredible." He focuses on A.E.'s inconsistent testimony that she was raped forty to forty-five times in the course of forty to forty-five days (she had earlier stated that the number of encounters was far less), that up to eight men were involved in her molestations (no other men were identified or apprehended), and the fact that the girls' physical examinations showed no clear signs of sexual abuse.

 Our review requires that we accept the evidence and the inferences that the jury may have drawn therefrom in sup-

1. SDCL 22–22–1 provides, in salient part:

 Rape is an act of sexual penetration accomplished with any person other than the actor's spouse under any one or more of the following circumstances:
 ....
 (4) Where the victim is less than ten years of age; or
 (5) Where the victim is ten years of age, but less than sixteen years of age, and the perpetrator is at least three years older than the victim[.]

A violation of subdivision ... (4) ... of this section is rape in the first degree, which is a Class 2 felony. A violation of subdivision (5) of this section is rape in the second degree, which is a Class 3 felony.

2. SDCL 22–22–7 provides, in salient part:

 Any person, fourteen years of age or older, who knowingly engages in sexual contact with another person, other than his spouse when such other person is under the age of sixteen years is guilty of a Class 4 felony.

port of the verdict. The jury's verdict will not be set aside if the evidence and the reasonable inferences drawn therefrom sustain a rational theory of guilt. *See State v. McCafferty*, 356 N.W.2d 159 (S.D. 1984). *See also State v. Ree*, 331 N.W.2d 557 (S.D.1983); *State v. Grey Owl*, 316 N.W.2d 801 (S.D.1982); *State v. Herrald*, 269 N.W.2d 776 (S.D.1978); *State v. Boyles*, 260 N.W.2d 642 (S.D.1977). The trial court's denial of his motion for acquittal will not be disturbed if the State made out a prima facie case from which the jury could reasonably find the defendant guilty. *State v. Dirk*, 364 N.W.2d 117 (S.D.1985)

■ Bachman asserts that the inconsistent testimony concerning the number of attacks, State's inability to locate the other claimed perpetrators of the molestations, and the victims' failure to report the alleged molestations for over a year constitute a sufficient basis to conclude that the evidence and the reasonable inferences drawn therefrom are insufficient to sustain a rational theory of guilt. We disagree.

Both A.E. and J.E. testified at great length concerning Bachman's activities with them. We first note that young children generally are unlikely to fabricate a graphic account of sexual activity because such an activity is beyond the realm of their experience. *See McCafferty, supra*. Moreover, the pediatrician who examined both of the girls testified to the existence of evidence of their having been molested. Further, two psychologists who testified concerning the mental condition of A.E. and J.E. noted that while the girls recounted their stories independently, they were remarkably similar. One psychologist also noted that it was not unusual for a child who is a victim of molestation to wait for one or two years before reporting such abuse. Finally, one psychologist noted that it is not uncommon for a child to give varying details (i.e., the number of attacks or attackers) when re-relating incidents of sexual abuse. Our review of the evidence leads us to the conclusion that sufficient evidence was presented to uphold the jury's verdict. *McCafferty, supra*. We further conclude that State presented a prima facie

case that Bachman committed the acts and that the trial court did not err in denying his motion for acquittal. *Dirk, supra.*

## II

## WHETHER THE TRIAL COURT ERRED IN ALLOWING INTO EVIDENCE EXPERT TESTIMONY ON THE CREDIBILITY OF THE COMPLAINING WITNESSES AND RAPE TRAUMA SYNDROME.

Bachman next claims that the trial court erred when it admitted into evidence the opinions of Dr. Mary Curran and Dr. Vail Williams concerning the credibility of the testimony of A.E. and J.E. and allowing their testimony on rape trauma syndrome.

Bachman requested the pretrial examination of A.E. and J.E. to determine their competency to testify truthfully and to determine whether they suffered from any mental or moral delusions or tendencies which would distort their imagination and affect their credibility. The girls were evaluated by Dr. Williams, who concluded that they were competent to testify. Later, Bachman moved to suppress the testimony of Dr. Williams and Dr. Curran (whom the State planned to call to testify regarding post-traumatic stress disorders). Bachman contended that Dr. Williams' deposition testimony had accomplished its purpose of showing that A.E. and J.E. knew the nature of the proceedings and were otherwise competent to testify. At the conclusion of the pretrial hearing, the trial court denied his motion to suppress the testimony of Dr. Curran and took under advisement Bachman's motion to suppress testimony of Dr. Williams. At trial, immediately before Dr. Williams' deposition was read to the jury, an in-chambers hearing was held at which time the trial court denied Bachman's motion to suppress.

Dr. Williams, by deposition, told the jury that he interviewed both A.E. and J.E. and that, in his opinion, neither girl showed any symptoms of psychosis, delusions, or hallucinations, but that they showed some symptoms found in sexual abuse victims. Dr. Curran, who had not interviewed the chil-

dren, gave live testimony concerning the behavior patterns that a sexually abused child would demonstrate, including their failure to disclose the claimed abuse, nightmares, insomnia, et cetera.

■ We first note that the trial court has broad discretion concerning the qualification of experts and the admission of expert testimony. The trial court's decision on such matters will not be reversed absent a clear showing of an abuse of discretion. *State v. Logue,* 372 N.W.2d 151 (S.D.1985). Bachman submits that a different standard must be used in reviewing this issue. Relying on *Bohnert v. State,* 312 Md. 266, 539 A.2d 657 (1988), he claims that the admission of expert testimony is a matter of law, and "[i]n ruling on a question of law, a judge is either right or wrong, and discretion plays no part." *Id.* 539 A.2d at 663. Using that standard, Bachman submits that the trial court erred in admitting the expert testimony due to its lack of relevance, its tendency to invade the province of the jury, its failure to meet the *Frye* test [3] and its violation of his right to a fair trial.

Bachman also relies heavily on this court's holding in *Logue, supra.* In *Logue,* we held that it was prejudicial error for a social worker to give her opinion that an alleged victim gained his sexual knowledge from having sex with the defendant. We noted therein that permitting the social worker to testify as an expert in that case "lent a stamp of undue legitimacy to her testimony." 372 N.W.2d at 157. Our ruling therein was based on an application of the Ultimate Fact Doctrine, which restricts witnesses from testifying as to ultimate issues.

■ We decline to accept Bachman's invitation to stray from our own precedent concerning the trial court's discretion in admitting expert testimony.[4] Further, while we adhere to our holding in *Logue,* we believe that it is inapposite to the facts in this case. Unlike *Logue,* Drs. Williams and Curran were undoubtedly qualified as experts. Moreover, neither testified that either A.E. or J.E. had been molested by Bachman and neither testified that the girls were absolutely telling the truth. Instead, Drs. William and Curran both simply shared their expert knowledge with the jury in order to assist it in determining whether A.E. and J.E. had been molested and the amount of credence to give the girls' testimony. The use of such testimony was also discussed in *State v. Swallow,* 350 N.W.2d 606 (S.D.1984), wherein we stated that the determining factor in admitting expert testimony is whether it would assist the jury in understanding matters that normally would not lie within a layman's breadth of knowledge. Moreover, the jury here was instructed that it was to be the sole judge of the credibility of the child witnesses and that it was not bound to accept the opinions of either doctor.[5]

■ Bachman also asserts that the expert testimony concerning rape trauma syndrome should not have been admitted, primarily relying on *State v. Saldana,* 324 N.W.2d 227 (Minn.1982). The court in *Saldana* stated that rape trauma syndrome is not a fact-finding tool, but rather a therapeutic tool useful in counseling. It also noted that a majority of courts that have considered the issue hold that it is erroneous to admit expert opinions which conclude that a rape or sexual assault had occurred. Again, we believe that *Saldana* is factually inapposite. *Saldana* involved expert testimony as to whether *in fact* a rape had occurred. It also involved two adults and focused on the issue of whether

---

**3.** *Frye v. United States,* 293 F. 1013 (D.C.Cir. 1923).

**4.** We also note that Bachman misreads *Bohnert v. State,* 312 Md. 266, 539 A.2d 657 (1988), as the court therein states that "the admissibility of expert testimony is a matter largely within the discretion of the trial court and its action will seldom constitute a ground for reversal." *Id.* 539 A.2d at 661.

**5.** Instruction 19 read:

You may also consider the qualifications and credibility of the expert. You are not bound to accept the expert's opinion as conclusive, but should give to it the weight to which you find it to be entitled. You may disregard any such opinion if you find it to be unreasonable.

the act was consensual. Here, neither expert was asked whether A.E. or J.E. was *actually molested.* Moreover, contrary to *Saldana,* the present case deals with child victims and their ability to competently testify. Finally, Dr. Curran's testimony on rape trauma syndrome was not intended to point an accusing finger at Bachman, but rather to assist the jury by stating what type of behavior is displayed by victims of sexual abuse.

We note that the *Saldana* court also considered *State v. Myers,* 359 N.W.2d 604 (Minn.1984), which more closely resembles the facts present here and correctly draws a distinction between cases involving adults and those involving children. In *Myers,* the defendant was found guilty of having sexual contact with a seven-year-old girl who was the daughter of the defendant's live-in girl friend. The incident was not reported to the authorities until several months later. The victim was examined by a physician who determined that the victim's hymen was intact and that she was otherwise normal for a girl of her age. A clinical psychologist also examined the victim on several occasions, when the victim related the manner in which she was abused. The psychologist noted that her allegations remained consistent. At trial, the psychologist related what the complainant had told her about the incident and other occasions of sexual abuse and testified that the complainant's allegations had remained consistent throughout their meetings. The psychologist was also permitted to describe characteristics typically observed in sexually abused children *and* that she observed these characteristics in the victim. Finally, the psychologist testified that it is extremely rare for children to fabricate tales of sexual abuse and that, in her opinion, the victim knew the difference between truth and falsehood *and* that she was truthful in her allegations.

On appeal, the court distinguished *Saldana,* noting that:

[W]hen the alleged victim of a sexual assault is a child or mentally retarded person there is presented one of those 'unusual cases' in which expert testimony concerning credibility of a witness should be received. In the case of a sexually abused child consent is irrelevant and jurors are often faced with determining the veracity of a young child who tells of a course of conduct carried on over an ill-defined time frame and who appears an uncertain or ambivalent accuser and who may even recant. Background data providing a relevant insight into the puzzling aspects of the child's conduct and demeanor which the jury could not otherwise bring to its evaluation of her credibility is helpful and appropriate in cases of sexual abuse of children, and particularly of children as young as this complainant. (Footnote omitted.) (Citations omitted.)

We agree with the *Myers* court and hold here that the trial court did not err in admitting expert testimony concerning the traits and characteristics typically found in sexually abused children, characteristics or emotional conditions observed in the victims, and opinion testimony that the victims' allegations were truthful. *See also State v. Middleton,* 294 Or. 427, 657 P.2d 1215 (1983) and *State v. Kim,* 64 Hawaii 598, 645 P.2d 1330 (1982).

Bachman also contends that Dr. Curran's testimony on rape trauma syndrome should not have been admitted because it failed to meet the requirements of the *Frye* test. *See Frye, supra* note 3. Under *Frye:*

[T]he opinions of experts . . . are admissible in evidence in those cases in which the matter of inquiry is such that inexperienced persons are unlikely to prove capable of forming a correct judgment upon it, for the reason that the subject-matter so far partakes of a science, art, or trade as to require a previous habit or experience or study in it, in order to acquire knowledge of it. When the question involved does not lie within the range of common experience or common knowledge, but requires special experience or special knowledge, then the opinions of witnesses skilled in that particular science, art, or trade to which the question relates are admissible in evidence.

*Frye,* 293 F. at 1014. The *Frye* test was recently reaffirmed by this court in *State v. Miller,* 429 N.W.2d 26 (S.D.1988) and *State v. Adams,* 418 N.W.2d 618 (S.D. 1988). Bachman submits that those courts which have applied the *Frye* test to rape trauma syndrome have held that such testimony is inadmissible. *See, e.g., People v. Bledsoe,* 36 Cal.3d 236, 203 Cal.Rptr. 450, 681 P.2d 291 (1984). However, we believe that *Bledsoe* and the other cases cited by Bachman again are distinguishable. The testimony of Dr. Curran · on rape trauma syndrome does not violate the mandate of *Frye* in the setting of a criminal trial for the sexual abuse of a child. The testimony was offered merely to inform the jury of the characteristics which may be displayed by one who has been sexually abused. The testimony did not reach an ultimate fact and did not invade the province of the jury, but rather was designed to assist it in making its decision. We thus hold that the testimony of Dr. Curran on rape trauma syndrome met the requirements set forth in *Frye.*

### III

WHETHER THE TRIAL COURT ERRED IN ALLOWING THE JURY TO CON-SIDER BOTH CHARGES OF RAPE AND SEXUAL CONTACT WITHOUT INSTRUCTING IT AS TO THE MU-TUAL EXCLUSIVITY OF THE CHARGES.

█ Bachman next contends that the trial court erred when it overruled his objections to instructions 32 and 33 (which set forth the elements of the offenses) and when it refused his proffered instructions which pertained to the mutual exclusivity of the offenses of sexual contact and rape. The purpose of Bachman's proposed instructions was to explain to the jury that it could not return a verdict of guilty on both sexual contact and rape stemming from one incident.

We initially note that Bachman is correct that sexual contact is a separate and distinct offense from rape. *See State v. Brammer,* 304 N.W.2d 111 (S.D.1981). *Brammer* is factually distinguishable, how-ever, in that only a single sexual act oc-curred. Here, A.E. and J.E. testified that Bachman had molested them on several occasions in different manners over a peri-od of weeks. Thus, giving due deference to the jury's determination, *McCafferty, supra,* we believe that it was possible that Bachman had raped each girl on some occa-sions and that separate acts constituting sexual contact took place on other occa-sions. The testimony of A.E. and J.E. showed that Bachman attempted oral, anal and vaginal intercourse with each of them. If those acts or attempted acts occurred at different times, then the elements of each offense would have been met by State and the court would not have erred in allowing the jury to consider both charges of rape and sexual contact.

We have examined Bachman's other is-sues (whether the trial court erred in allow-ing State to question Bachman concerning a prior felony conviction; whether the trial court erred in allowing State to examine Bachman concerning matters allegedly pro-tected by the attorney/client privilege; and whether the trial court violated Bachman's constitutional rights due to the length of the sentences imposed) and find them to be without merit.

Affirmed.

WUEST, C.J., and MORGAN, J., concur.

HENDERSON and SABERS, JJ., dissent.

HENDERSON, Justice (dissenting).

I respectfully dissent. The testimony of Dr. Williams, regarding rape trauma syn-drome, deprived Bachman of a fair trial by imbuing the girls' testimony with an unde-served scientific aura of truth. Therefore, I would reverse.

The majority opinion relates that neither Dr. Williams nor Dr. Curran "testified that either A.E. or J.E. had been molested by Bachman and neither testified that the girls were absolutely telling the truth." This statement may have been true of Dr. Curran, who had not examined the girls, but Dr. Williams testified that the girls did

not exhibit "any mental symptoms indicating any psychosis, delusions, hallucinating, or other mental impairment or emotional impairment at this time." This testimony was direct commentary on the girls' credibility as witnesses, which is the exclusive province of the jury. *See, State v. Huber,* 356 N.W.2d 468, 476 (S.D.1984); *State v. Bonrud,* 246 N.W.2d 790, 793 (S.D.1976). The prejudice of Dr. Williams' testimony outweighed its probative value and had too much potential to mislead the jury. This conclusion is not based on the "ultimate fact doctrine", which this Court rejected in *State v. Logue,* 372 N.W.2d 151 (S.D.1985). Rather, it is premised on a concept explained in *Logue:*

> [W]ithin the context of a criminal trial, "[s]cientific or expert testimony particularly courts the [danger of undue prejudice or of confusing the issues or misleading the jury] because of its aura of special reliability and trustworthiness." [*United States v. Amaral,* 488 F.2d 1148, 1152 (9th Cir.1973) ] (citation omitted). Permitting the social worker to testify as an "expert" that it was her opinion that the alleged victim gained his sexual knowledge from having sex with appellant, lent a stamp of undue legitimacy to her testimony. Admittedly, the trial court has broad discretion in qualifying an expert but, here, *we are not dealing with scientific data which will aid the jury in an area wholly beyond their understanding. Clearly, the social sciences do not claim empiricism or the scientific exactitude that physics and medicine aspire to.* We believe that the possibility of prejudice substantially outweighed the probative value of this testimony, and that the trial court clearly abused its discretion in admitting it.

*Logue,* at 157. (emphisis added).

Dr. Williams also testified that she believed A.E.'s bad dreams, which according to A.E., by Williams' account, "to most extent referred to the alleged incident[,]"

i.e., with Bachman, were "reflective of the syndrome that's frequently found in a physical or sexual abuse cases." Thus, Williams connected Bachman to abuse of the girls; 1) A.E. had bad dreams about the charged incident; 2) these dreams, Dr. Williams believed, indicated sexual abuse. The predicate, necessarily, was that Bachman was guilty. Unlike *State v. Swallow,* 350 N.W.2d 606 (S.D.1984), where a counselor testified in generalized terms about pedophilia, Dr. Williams specifically connected the girls, A.E. particularly, to sexual abuse and "the alleged incident." *

In *State v. Taylor,* 663 S.W.2d 235 (Mo. 1984), the Missouri Supreme Court, en banc, deemed a psychiatrist's testimony that a witness did not fantasize a rape and suffered from rape trauma syndrome to be reversible error:

> The jury was competent to determine the victim's credibility; therefore, Dr. Amanat's testimony designed to invest scientific cachet on the critical issue was erroneously admitted. Otherwise, trials could degenerate to a battle of experts expressing substance of witness' veracity.

*Taylor,* at 241. Similarly, Dr. Williams testified about the significance of A.E.'s flashback memory, which "is not something an individual has control over." The only purpose of such testimony is to impermissibly enhance the credibility of the witness, A.E. *See, Commonwealth v. Gallagher,* 519 Pa. 291, 295–297, 547 A.2d 355, 358 (1988). The risk of expert testimony that a complaining witness suffers from rape trauma syndrome is obvious: "[T]he use of such terminology is likely to mislead the jury into inferring that such a classification reflects a scientific judgment that the witness was, in fact, raped." *People v. Coleman,* 48 Cal.3d 112, 143–44, 255 Cal. Rptr. 813, 830, 768 P.2d 32, 49 (1989) (quoting *People v. Bledsoe,* 36 Cal.3d 236, 203 Cal.Rptr. 450, 681 P.2d 291 (1984)). In *Coleman,* the California Supreme Court re-

---

\* A.E. had a septate hymen, making penetration impossible; there were no physical signs of rape on A.E.; yet, supposedly, she was raped 40 to 45 times in approximately 40 to 45 days by eight men. Even the trial court commented that her story was "somewhat incredible" and also referred to the girls' statements as an "incredible story".

iterated its ban, enunciated in *Bledsoe,* on testimony of the type given here:

> We recognized the propriety of introducing evidence on rape trauma syndrome under some circumstances to "provid[e] the jury with recent findings of professional research on the subject of a victim's reaction to sexual assault" (citation omitted), but such evidence is "limited to discussions of victims as a class, supported be references to literature and experience (such as an expert normally relies upon) and does not extend to discussion and diagnosis of the witness in the case at hand (citation omitted).

*Coleman, id.* In short, Dr. Williams' testimony was erroneously admitted under *Coleman* and its forerunner, *Bledsoe.*

As developed to date, the nature of rape trauma syndrome, does not permit its use as proof that a rape occurred, which was the underlying message of Dr. Williams' testimony as explained in Bledsoe:

> There is, however, a fundamental difference between rape trauma syndrome and both the battered child syndrome and the other scientific methods of proof that have in the past been evaluated against the *Frye* [293 F. 1013 (D.C.Cir.1923)] standards of reliability. Unlike fingerprints, blood tests, lie detector tests, voice-prints or the battered child syndrome, (footnote omitted) rape trauma syndrome was not devised to determine the "truth" or "accuracy" of a particular past event—i.e., whether, in fact, a rape in the legal sense occurred—but rather was developed by professional rape counselors as a therapeutic tool, to help identify, predict and treat emotional problems experienced by the counselors clients and patients.

*Bledsoe, supra,* 36 Cal.3d, at 249–50, 203 Cal.Rptr., at 459, 681 P.2d, at 300. This evidence clearly is too unreliable for admission, as "permitting a person in the role of an expert to *suggest* that because the complainant exhibits some of the symptoms of rape trauma syndrome, the victim was therefore raped, unfairly prejudices the appellant by creating an aura of special reliability and trustworthiness." *Bledsoe, su-*

pra, Cal.3d at 251–52, 203 Cal.Rptr., at 460, 681 P.2d at 301.

In conclusion: Bachman's conviction should be reversed and remanded for new trial. Dr. Williams' testimony was unfairly prejudicial, having the appearance of scientific exactitude which it did not, in fact, possess. The concerns expressed in *Logue* and *Bledsoe* are compelling in this case. As in *Logue,* the weak evidence and abhorrent nature of the crime charged makes me believe that the triers of fact were unduly inclined to rely upon expert opinion. *See, Logue, supra,* at 158. As I indicated in my special concurrence in *State v. Hallman,* 391 N.W.2d 191, 196–7 (S.D.1986):

> What I am driving at is this: Incest victims or rape trauma victims cannot be singled out, specifically, in a given factual scenario, by professional experts as having had a crime perpetrated upon them. The dynamics involved in a like crime may be testified to by experts but for certain limited purposes. Such a purpose would be to support that a class of victims typically make poor witnesses and are reluctant to disclose sordid episodes. Another example would be to permit a professional expert to reveal to the jury that professional research reveals certain findings on the subject of a victim's reaction to sexual assault, given to rehabilitate the complaining witness. (citations omitted).

Therefore, I dissent.

SABERS, Justice (dissenting).

In its treatment of *State v. Logue,* 372 N.W.2d 151 (S.D.1985); *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923); and *People v. Bledsoe,* 36 Cal.3d 236, 203 Cal. Rptr. 450, 681 P.2d 291 (1984), the majority unduly strains to support inadmissible and prejudicial expert testimony. The majority strains as follows:

> The testimony of Dr. Curran on rape trauma syndrome does not violate the mandate of *Frye* in the setting of a criminal trial for the sexual abuse of a child. The testimony was offered *merely* to inform the jury of the characteristics which may be displayed by one who has been sexually abused. The testimony

*did not* reach an ultimate fact and *did not* invade the province of the jury, but *rather* was designed to assist it in making its decision. We thus hold that the testimony of Dr. Curran on rape trauma syndrome met the requirements set forth in Frye.

(Emphasis added). This testimony was also offered to establish credibility. In fact, the State argued that it needed this testimony to show that the girls were "reliable" since the children's testimony needed an "even break." The State admits the experts' testimony was "pivotal" in proving its case, and therefore, if error, it was not "harmless error." Defendant argues that removal of

> the experts' testimony from this case would have left the jury pondering whether it was believable that eight men would engage in sexual intercourse ev-

ery night of the week for forty-five days with a girl who was naturally protected from such gross behavior. [Even] [t]he trial judge labeled it an "incredible" story.

"The credibility of witnesses and weighing the evidence is for the jury[,]" *State v. Myers*, 88 S.D. 378, 381, 220 N.W.2d 535, 537 (1974); *accord Logue, supra; United States v. Barnard*, 490 F.2d 907 (9th Cir. 1973), *cert. denied*, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974), not for the experts. Therefore, I join the dissent of Justice Henderson.