STATE of South Dakota, Plaintiff
and Appellee,

v.

Ron CARLSON, Defendant
and Appellant.

No. 14866.

Supreme Court of South Dakota.

Considered on Briefs Oct. 24, 1985.

July 30, 1986.

Sherri L. Sundem, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., and Barry Vlasman, Legal Intern, Pierre, on brief.

John N. Gridley III, Sioux Falls, for defendant and appellant.

MORGAN, Justice.

Defendant Ron Carlson (Carlson) was convicted of one count of sexual contact with a minor under the age of fifteen, SDCL 22–22–7, after trial to a jury. The alleged victim was Carlson's daughter, Dawn, DOB 2/26/66. Carlson appeals from the conviction and we reverse and remand.

Carlson and his family lived in Baltic, South Dakota, from 1965 until the summer of 1983, although Carlson was a teacher in the Watertown, South Dakota, school sys-

tem beginning in the fall of 1979. He initially commuted daily for some period of time and then stayed in Watertown during the week, returning home only on weekends. In the summer of 1983, Carlson's wife, Lita, found a job in Watertown and they contemplated moving there with their youngest child, Dawn. The record reflects resistence to the move by Dawn, who would have been a senior in Baltic High School in the 1983–84 school year.

In August of 1983, Dawn, who was then seventeen years of age, and a close friend, Sue Horstmeyer (Mrs. Horstmeyer), a neighbor for whom Dawn babysat, were discussing the prospects of Dawn moving to Watertown with her parents. At that time, Dawn told Mrs. Horstmeyer that Carlson had come into her room and fondled her breasts and at times put his fingers into her vagina. Dawn also told Mrs. Horstmeyer that she had not told her mother or anyone about the incident as she did not want to hurt her parents, nor did she want to make any trouble for them. During the period of 1981–82, Dawn also complained to her brother Allen that Carlson was "bothering her." She did not indicate at that time in what manner she was being bothered but in June of 1983, a somewhat intoxicated Dawn became hysterical when Carlson showed up unannounced and unexpected at a party. She then complained to Allen that Carlson had been bothering her and explained that she meant that he would be rubbing her back and "that his hands would touch her in other spots." Eventually, Mrs. Horstmeyer informed the school authorities of what Dawn had told her. Dawn was subsequently interviewed by Pat Adams, a Minnehaha County Deputy Sheriff and a member of the Child Protection Team. The investigation resulted in Carlson's indictment by the grand jury for sexual contact with a minor.

On appeal, Carlson raises two issues: (1) Whether the statements made by Dawn to Mrs. Horstmeyer and to Deputy Sheriff Adams were admissible in evidence as prior consistent statements; and (2) whether the trial court erred in not ordering a psychiatric examination of Dawn prior to the trial.

Carlson's counsel initially contends that the trial court erred in admitting hearsay statements as nonhearsay under the prior consistent statement rule of SDCL 19–16–2(2). In a pretrial hearing on a defense motion in limine to exclude as hearsay any statements made by Dawn to any of State's witnesses outside of Carlson's presence, the trial court deferred ruling on the motion until the particular statements could be heard outside the presence of the jury and ruled on individually. After opening statements, the trial court held an *in camera* conference wherein Mrs. Horstmeyer was examined to determine what testimony she would be providing concerning Dawn's statements during the trial. Defense counsel objected to admission on the grounds of hearsay. After argument of counsel, the trial court stated:

> It does occur to me in view of the situation that has been outlined in the opening statements that there is an express or implied charge of improper influence or motive and recent fabrication. I am going to admit this evidence under Rule 801(d)(1)(B) (SDCL 19–16–2(2)) as a statement that's consistent with the testimony of the complaining witness and is offered to rebut an express or an implied charge of her recent fabrication or improper influence or motive, and I am going to overrule your objection to that evidence.

SDCL 19–16–2 provides, in pertinent part:

> A statement is not hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is
>
> . . . .
>
> (2) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive[.]

This is adopted verbatim from the Federal Rules of Evidence, 801(d)(1)(B). Carlson argues that a statement must have been made before the time of any alleged fabrication or existence of improper influence or

motive, citing *United States v. McPartlin*, 595 F.2d 1321, 1351 (7th Cir.1979). We recently discussed this rule in *State v. Thompson*, 379 N.W.2d 295 (S.D.1985), wherein we adopted a three-part test found in *United States v. Quinto*, 582 F.2d 224 (2d Cir.1978):

> Before a prior consistent statement will qualify as nonhearsay under the rule, the proponent must demonstrate three things. First, he must show the prior consistent statement is consistent with the witness' in-court testimony. Second, he must establish that the statement is being used to rebut an express or implied charge against the witness of recent fabrication or improper motive or influence. Finally, the proponent must demonstate that the prior consistent statement was made prior to the time the proposed motive to falsify arose.*

*Thompson*, 379 N.W.2d at 296.

Carlson urges that the statement to Mrs. Horstmeyer, which was the seed from which the criminal investigation sprang, was made after the dispute arose over Dawn moving to Watertown with the family. Weinstein states:

> Substantive use under Rule 801(d)(1)(B) is limited to situations where high probative value is most likely. Evidence which counteracts the suggestion that the witness change his story in response to some threat or scheme or bribe by showing that his story was the same prior to the external pressure is highly relevant in shedding light on the witness' credibility. Evidence which merely shows that the witness said the same thing on other occasions when his motive was the same does not have much probative force 'for the simple reason that mere repetition does not imply veracity.'

4J. Weinstein & M. Berger, *Weinstein's Evidence* 801–150–151. *See also McPartlin, supra.* Judge Weinstein further notes:

> [T]he court has considerable discretion to admit on the issue of credibility as compared to a narrower scope where the proffer is as evidence-in-chief. Since Rule 801(d)(1)(B) provides that the prior consistent statement may be accorded substantive use only if it is used *to rebut* an express or implied charge, impeachment of the witness is a precondition.

4 J. Weinstein & M. Berger, at 801–152–153. (Emphasis in original.)

In this case, the testimony of Mrs. Horstmeyer was offered prior to Dawn even taking the stand. As the Ninth Circuit Court of Appeals said in *United States v. Strand*, 574 F.2d 993, 997 n. 4 (9th Cir. 1978): "[S]ince the defendant had not testified, the statements were not admissible as prior consistent statements[.]" In this case, the trial court declared the statements admissible under the rule only on the basis of the opening statements of counsel, which were not transcribed and are not part of the record. He made no attempt to determine if Dawn might have any motive to fabricate and to evaluate whether the statements were made before or after such improper motive arose. He apparently relied on the prosecutor's representations as to what Dawn would testify to.

■ State urges that the statements Dawn made to her brother Allen, which will be discussed later, negate any motive on the part of Dawn to fabricate. "This determination is better made at the time that the evidence is offered, or at a motion to suppress where the proper questions can be asked and the responses of the witness-

---

* The Eighth Circuit Court of Appeals apparently has rejected the third prong of the test, deeming it "an unnecessary refinement." *Hanger v. United States*, 398 F.2d 91, 104 (8th Cir.1968). *See United States v. Scholle*, 553 F.2d 1109, 1122 (8th Cir.1977). We know, however, that both of these cases involve admission of consistent statements that were made after declarant had made inconsistent statements. The decision

took the position that "[t]he district court acted within its sound discretion in allowing the jury to hear both the inconsistent and consistent statements in order to evaluate their relative trustworthiness." *Scholle*, 553 F.2d at 1122. We distinguish inconsistent statement cases from improper influence or motive cases. In the latter, there is nothing to balance.

es observed by the trial judge before admitting or suppressing the evidence." *State v. Martin*, 135 Ariz. 552, 555, 663 P.2d 236, 239 (1983). We thus conclude that the trial court erred in admitting the testimony of Mrs. Horstmeyer without making the proper determination as to the basis for admission under SDCL 19–16–2(2).

Carlson also urges error because of the trial court's admissions of the report of Deputy Adams on statements made by Dawn in May of 1984 after her parents had told her they could not help her with college. What we have said regarding Mrs. Horstmeyer's testimony would be equally applicable to Adams' testimony, however, no *in camera* hearing on the proposed testimony was held before the witness testified. The record is devoid of any objection on the part of Carlson. We have repeatedly held that " '[w]e will not review a matter on appeal unless proper objection was made before the trial court.' [citations omitted] Objections must be made to the trial court to allow it to correct its mistakes." *Johnson v. John Deere Co.*, 306 N.W.2d 231, 239 (S.D.1981).

■ State also elicited, without objection, the testimony of Dawn's brother Allen regarding statements made to him as early as the 1981–82 school year. She complained that Carlson was "bothering" her. Carlson suggests that Allen did not take that to mean "sexually." There was one more complaint and finally the one in June of 1983 when Carlson arrived home unexpectedly one evening and Dawn became hysterical. Carlson does not contend that these statements were made under improper influence or motive; rather, he passes them off as to what Allen understood them to mean. What Allen understood his sister to mean in 1981 or 1982, is immaterial. The fact is that she made the statements. Absent objection, they were clearly admissible as consistent statements made prior to the existence of any motive or improper influence.

■ In *Martin, supra*, where the Arizona Supreme Court was faced with a total of five witnesses supposedly testifying to statements by the alleged victim, they held: "[I]f the statements were admitted erroneously it cannot be said beyond a reasonable doubt that the parade of corroborating witnesses had no influence upon the jury's deliberations ... and their admission is not, therefore, harmless error." *Martin*, 663 P.2d at 239. We have only Mrs. Horstmeyer's testimony in issue, but considering that she was identified as Dawn's close friend and confidant, the mother of three children herself, the lead-off witness for the prosecution, and the instigator of the investigation over Dawn's tearful protest that she did not want to hurt her mother or her dad, we too cannot say that her testimony had no influence upon the jury's deliberations. The admission therefore cannot be considered harmless error and requires reversal of the conviction.

Because the second issue may arise again upon retrial, we deem it advisable to address it. Carlson claims that the trial court erred in denying his motion for a psychiatric examination of Dawn, the complaining witness. He claimed that since the indictment covered nearly a three-year period and Dawn did not complain of the alleged sexual contact until approximately two years after her fifteenth birthday, the defense was entitled to a psychiatric examination to determine her ability to tell the truth. He further urged that the alleged sexual contact was fabricated due to his unwillingness to pay for Dawn's college education expenses.

■ Whether a psychiatric examination of the complaining witness in a sexual offense case should be ordered is within the sound discretion of the trial court. It should be granted only upon a substantial showing of need and justification which is not a light burden. *State v. McCafferty*, 356 N.W.2d 159 (S.D.1984). The purpose of a psychiatric examination in cases involving sex offenses is to detect any mental or moral dillusions or tendencies causing distortion of the imagination which would affect the probable credibility of the complaining witness. *State v. Reiman*, 284 N.W.2d 860 (S.D.1979). Carlson, however,

did not show any of the reasons which this court has looked at in deciding whether or not a psychiatric examination is proper. There is no evidence in the record to show that Dawn had any mental or moral dillusions or a tendency which would cause distortion or affect credibility. *See Reiman, supra.* We find no abuse of the trial court's discretion in failing to order the examination.

We reverse the conviction and remand.

HENDERSON and WUEST, JJ., and HERTZ, C.J., acting as a Supreme Court Justice, concur.

FOSHEIM, C.J., dissents.

SABERS, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.

FOSHEIM, Chief Justice (dissenting).

It is my understanding the majority finds Mrs. Horstmeyer's repetition of Dawn's prior consistent statements erroneous for three reasons: (1) the trial judge admitted prior consistent statements merely due to remarks made in opening statements and not on any evidentiary attack on the witness; (2) the trial judge failed to determine whether the alleged victim had a motive to lie; (3) the judge failed to consider whether these statements were made before or after any improper motive to lie arose. This dissent is structured accordingly.

(1) The majority opinion is correct in holding that a party may not offer a prior consistent statement based solely upon an attack on a witness made in the opposing party's opening statement or upon an anticipated impeachment. Binder, *Hearsay Handbook* § 2.14 at 53–54 (2d ed. 1983); 4 Louisell, *Federal Evidence*, § 420 at 198–99. What the majority overlooks, however, is that even if Dawn's prior statements were prematurely admitted because no evidence impeaching Dawn's credibility had yet been offered, "the subsequent occurrence of the attack may [have] cure[d] any error in previous receipt of the statement." Louisell, *supra*, at 198-9 (and cases cited therein). Here the defense charged, albeit

subsequent to Mrs. Horstmeyer's testifying, that Dawn was lying at trial because she did not want to move to Watertown with her parents, and was seeking revenge against her father for his refusal to help finance her college education. Indeed, since the defendant denied any sexual touching of Dawn, his defense required impeaching her credibility. When subsequent to Mrs. Horstmeyer's testimony, defense counsel impeached Dawn it thereby "opened the door" for Mrs. Horstmeyer's repetition of Dawn's previous consistent statements, and the premature admission of these statements was cured. *U.S. v. Gonzalez,* 700 F.2d 196, 200–02 (5th Cir. 1983); *U.S. v. Allen,* 579 F.2d 531, 532–33 (9th Cir.1978); *U.S. v. Simmons,* 567 F.2d 314, 321–22 (7th Cir.1977). According to Binder, to hold as the majority does, that it is reversible error to admit a prior consistent statement before the witness is impeached, is to "exalt form over substance." Binder, *supra*, 1985 Supp. at 19. *See also U.S. v. Chanya,* 700 F.2d 192, (5th Cir. 1983) (not error to allow a prior consistent statement of a witness to be admitted before that witness is impeached if the witness is subsequently called and the later testimony rebuts the charge of recent fabrication or improper motive.)

(2) Without supporting authority, the majority concludes the trial judge erred for failing to determine whether the alleged victim actually had a motive to lie. This is simply an incorrect interpretation of the Rule. The crucial occurrence making the Rule operative is the party opposing admission of the prior statement opening the door to its receipt by attempting to establish that the witness who made the prior consistent statement is now lying or has an improper influence behind her testimony. Fed.R.Evid. 801 (d)(1)(B) advisory committee note. The Rule allows rehabilitation of a witness when there has been "a charge against him" of fabrication (SDCL 19–16–2(2)); not just where there is any basis in fact for the impeachment. In other words, the Judge merely decides whether any such

*charge* was made; not whether there *actually is* a motive to fabricate.

(3) The third error the majority finds with the trial court's ruling is that the Judge failed to determine whether the earlier consistent statements Dawn made to Mrs. Horstmeyer occurred prior to the emergence of any improper motive on Dawn's part. I agree this is required by the third prong of the *Thompson* test; however, I believe the statements qualify under the test.

As stated above, the defense alleged Dawn was lying at trial because she resisted the move to Watertown and because her father would not help fund her college education. Dawn made her statements to Mrs. Horstmeyer in August of 1983. This would be shortly after she learned of her parents desire that she move to Watertown. Thus, the prior consistent statements were not admissible to rebut the defense's charge that she was lying to avoid the move to Watertown, because it fails the third prong of the *Thompson* test. However, the defendant testified he informed Dawn of the family financial situation in April of 1984. TT 188. Thus, Dawn's statements to Mrs. Horstmeyer were made *prior* to the defendant informing Dawn of the lack of financial assistance her parents would afford her. This makes Dawn's prior consistent statements admissible to rebut any effect of this asserted motive for her to lie. The defense's decision to assert that Dawn was lying because of the family financial situation "opened the door" to the admission of Dawn's prior consistent statement to Mrs. Horstmeyer to rebut the charge that Dawn was lying at trial.

Finally, even if admitting the statements was error, it was harmless error. As the majority's opinion acknowledges, Dawn's brother Allen testified that Dawn told him the defendant had been molesting her. More importantly, Pat Adams, a member of the Child Protection Team, was allowed to testify about statements Dawn made to him. His account of these statements regarding the defendant's touching of Dawn

paralleled Mrs. Horstmeyer's account of Dawn's statements to her. Since the testimony of both witnesses was received without objection, it was solid evidence before the jury as the majority recognizes. Finally, the testimony of Dawn herself detailed what her father had done to her and repeated what she told Mrs. Horstmeyer. Therefore, the testimony of Mrs. Horstmeyer regarding statements Dawn made to her, in light of this other testimony, was cumulative only. Its admission was therefore nonprejudicial and no more than harmless error. *State v. Tribitt,* 327 N.W.2d 132 (S.D.1982) *citing Matter of N.J.W.,* 273 N.W.2d 134 (S.D.1978); *Matter of D.T.,* 89 S.D. 590, 237 N.W.2d 166 (1975); *Alberts v. Mutual Service Casualty Insurance Co.,* 80 S.D. 303, 123 N.W.2d 96 (1963).