STATE of South Dakota, Plaintiff
and Appellee,

v.

Jason Christopher ORELUP, DOB: 06–
13–69 PCN#: 2025670, Defendant
and Appellant.

No. 17785.

Supreme Court of South Dakota.

Considered on Briefs Sept. 1, 1992.

Decided Oct. 28, 1992.

Mark Barnett, Atty. Gen., Gary Campbell, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

John H. Mairose, Rapid City, for defendant and appellant.

WUEST, Justice.

This appeal arises from a criminal action in which a jury found defendant Orelup (Orelup) guilty on one count of felony abuse or cruelty to a minor in violation of SDCL 26–10–1. We reverse and remand for a new trial.

## FACTS

Four-year-old J.L. had lived with his stepmother and his father, Jason Orelup, for approximately six months. On the afternoon of December 11, 1990, J.L. arrived at the Lutheran Social Services Head Start School in Rapid City, South Dakota, complaining of a stomach ache. J.L. was taken to the office of Julie Larson, the registered nurse, where he told her his stomach hurt. When questioned by Larson as to where the pain was, J.L. held his abdomen. In response to Larson's query as to what he had eaten, J.L. told her he was put "on restrictions" by his father and had not eaten since school lunch the previous day. J.L. related when he was "on restrictions" he was not allowed to eat, play or leave his bedroom.

J.L. napped in the nurse's office for a half hour and then awoke and asked to use the bathroom adjoining the office. While in the bathroom, J.L. began screaming "There's blood in the toilet." Larson observed the toilet "was filled with blood and a dark, black tarry stool." Larson helped the child dress, tried to calm him and while someone stayed with J.L., called The South Dakota Department of Social Services (DSS).

When Larson tried to examine J.L., he became more hysterical and did not want his shirt lifted up. He finally allowed Larson to listen to his heart with a stethoscope. Larson observed bruises but did not inquire where they had come from, since in the past, "he was terribly frightened when I would ask how he got his

bruises or to look to see if he had any more." He would say, "I can't tell you." Larson did not ask J.L. why his stomach hurt; "he was very upset ... I was just trying to calm him down."

Marcia Cain, a social worker, arrived and arranged for law enforcement custody so J.L. could be taken to the hospital. She observed the toilet J.L. had used and stated, "the stool had blood clots in it." Cain and Lisa Fleming, another social worker, transported J.L. to Rapid City Regional Hospital Emergency Room.

At the hospital, Rob Grass, an investigator with the Pennington County Sheriff's Office, joined Cain, Fleming, a nurse and J.L. in the examination room. Grass asked the child what had occurred. J.L. replied he had hit himself in the stomach. Deputy Grass asked if that was what had really happened. After a few minutes, J.L. replied that while he was alone in his room at home his father had kicked him in the stomach with his boot. J.L. said it happened at the time the sun was coming up. He stated his father was angry as he had broken restrictions by getting up in the middle of the night to get something to eat or drink.

Dr. Donald E. Oliver, a pediatrician, was called to examine J.L. Dr. Oliver's information was that J.L. had reported a stomach ache to the school bus driver. During the exam, Dr. Oliver asked J.L. what had happened. J.L. stated his father had kicked him in the stomach.

Dr. Oliver diagnosed J.L. as bleeding from the rectum due to a tear in the lining of the colon. The doctor noted numerous small bruises in the upper left part of J.L.'s abdomen. The doctor's medical opinion was that J.L. had suffered blunt abdominal trauma, nonaccidental in nature, which led to the colonic tear. In Oliver's opinion, J.L. could not have inflicted such an injury on himself. Dr. Oliver also noted numerous bruises on different parts of J.L.'s body. In his opinion, the bruises were of different ages due to the differing bruise colors.

Photographs of J.L. were taken at the hospital by Officer Sue Fox, a Rapid City Police Officer on December 11, 1990.

At trial, Orelup denied having confronted J.L. at any time during the night or morning before he left for work. He denied preventing J.L. from eating with the family. He dismissed J.L.'s bruises as being caused by an accidental knock on the head while restrained during a temper tantrum, a grab to prevent J.L. from falling and unknown causes.

Jason Orelup's parental rights were eventually terminated and J.L. was adopted.

A Complaint was filed against Orelup on June 4, 1991 alleging a violation of SDCL 26–10–1, felony abuse or cruelty to a minor. After a preliminary hearing, he was bound over for trial.

At a motions hearing before the trial judge on December 5, 1991, Marcia Cain testified it was her expert opinion that bringing J.L. back to testify against his father would be detrimental to him. J.L. was in an adoptive home and Cain had not had contact with him for approximately eleven months. She based her opinion on a report of J.L.'s behavior to the DSS from a social worker supervising his adoptive placement. The trial court held J.L. was unavailable to testify as appearing would "create significant trauma." In light of the potential harm to J.L. and the significant indicia of trustworthiness of the statements, the trial court allowed hearsay statements at trial. The court granted Orelup's motion to suppress J.L.'s medical records and some of the photographs; two photographs of J.L. were admitted. Jason Orelup was found guilty by the jury on December 6, 1991.

Orelup raises the following issues on appeal:

(1) Whether the admission of hearsay statements violated Orelup's constitutional right to confront witnesses against him.

(2) Whether the trial court abused its discretion in admitting photographs and testimony concerning J.L.'s bruises.

█ This court will only disturb the decision of the trial court regarding admission

of evidence if there is a clear abuse of discretion. *State v. DeVall*, 489 N.W.2d 371 (S.D.1992); *State v. Olesen*, 443 N.W.2d 8, 9 (S.D.1989); *State v. Bawdon*, 386 N.W.2d 484, 486 (S.D.1986); *State v. Percy*, 80 S.D. 1, 117 N.W.2d 99, 100 (1962).

## I.

■ Orelup first argues that he was deprived of his constitutional right to confront J.L. at trial. U.S. Const. amend. VI;[1] S.D. Const. art. VI, § 7.[2]

The recent U.S. Supreme Court case of White v. Illinois is directly contrary to Orelup's assertion he had a right to confront his accuser face-to-face. *White v. Illinois*, 509 U.S. ——, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992). In *White*, the Court limited the holding of *Coy v. Iowa* to in-court procedures constitutionally required to protect defendant's rights under the Confrontation Clause. *White*, 509 U.S. at ——, 112 S.Ct. at 743, 116 L.Ed.2d at 860; *Coy v. Iowa*, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988) (screen which blocked child witness' view of defendant at trial for sexual assault under Iowa statute presuming trauma to child violated defendant's rights under the Confrontation Clause). The Court differentiated hearsay exceptions from in-court testimony:

> A statement that has been offered in a moment of excitement—without the opportunity to reflect on the consequences of one's exclamation—may justifiably carry more weight with a trier of fact than a similar statement offered in the relative calm of the courtroom. Similarly, a statement made in the course of procuring medical services, where the declarant knows that a false statement

may cause misdiagnosis or mistreatment, carries special guarantees of credibility ... where proffered hearsay has sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule, the Confrontation Clause is satisfied.

*White*, 509 U.S. at ——, 112 S.Ct. at 742, 116 L.Ed.2d at 859. Orelup's right of confrontation under the Sixth Amendment to the U.S. Constitution was not violated if the statements of J.L. were admitted under a "firmly rooted exception" to the hearsay rule. *Id.*

South Dakota has had a similar rule for over twenty years. This court has stated:

> The Sixth Amendment to the Constitution of the United States provides that one accused in a criminal prosecution shall enjoy the right to be confronted with the witnesses against him.... The Constitution of South Dakota assures him the same right in a different language.... While the hearsay rule and the confrontation clause are designed to protect similar values it does not follow that the right to be confronted demands that no hearsay evidence can ever be introduced.

*State v. Watts*, 85 S.D. 638, 643, 188 N.W.2d 913, 915–916 (1971). Under the South Dakota Constitution, as well as the U.S. Constitution, Orelup's right to confront witnesses against him was not violated if the statements of J.L. were admissible under exceptions to the hearsay rule.

## A.

Orelup contends the court abused its discretion by admitting hearsay evidence under SDCL 19–16–35[3] which requires the

---

1.  The Constitution of the United States provides:
    In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him[.]
    U.S. Const. amend. VI.

2.  South Dakota's Constitution provides:
    In all criminal prosecutions the accused shall have the right to ... meet the witnesses against him face to face[.]
    S.D. Const. art. VI, § 7.

3.  SDCL 19–16–35 provides:

A statement not specifically covered by any of §§ 19–16–30 to 19–16–34, inclusive, but having equivalent circumstantial guarantees of trustworthiness, is not excluded by § 19–16–4 if the declarant is unavailable as a witness and if the court determines that
(1) the statement is offered as evidence of a material fact;
(2) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and

witness be unavailable. The court found J.L. was unavailable based on Marcia Cain's opinion. Orelup argues Marcia Cain was not qualified to express an expert opinion as to the traumatic effect testifying at trial would have on J.L. Further, he claims Cain's opinion was based on hearsay as she had not seen J.L. for a period of eleven months and relied on information from another social worker.

■ Orelup's assertion Marcia Cain was not a qualified expert is not well taken. The trial court has broad discretion concerning the qualifications of experts. *State v. Floody*, 481 N.W.2d 242, 249 (S.D. 1992); *State v. Bachman*, 446 N.W.2d 271, 275 (S.D.1989); *State v. Edmundson*, 379 N.W.2d 835, 839 (S.D.1985); *State v. Shell*, 301 N.W.2d 669, 672 (S.D.1981). Cain has over 18 years experience as a social worker, has participated in hundreds of cases involving child abuse, regularly attends training seminars and is a certified child protection social worker. The trial court did not abuse its discretion in allowing Marcia Cain to testify as an expert.

■ Marcia Cain's personal knowledge concerning J.L. was eleven months old. Her subsequent information was based on a report to the DSS from another social worker. This is hearsay within hearsay.[4] The state did not introduce any evidence the information relied on by Cain fell within its own exception to the hearsay rule. Therefore, Cain's testimony as to J.L.'s unavailability as a witness was based on inadmissible hearsay. The trial court erred in finding J.L. unavailable to testify under SDCL 19–16–35.

(3) the general purpose of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this section unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

**4.** SDCL 19–16–36 provides:
Hearsay included within hearsay is not excluded under the hearsay rule if each part of

**B.**

■ At the motions hearing, the state argued the statements made to Dr. Oliver were admissible under SDCL 19–16–8.[5] Orelup claims the U.S. Supreme Court case of *Idaho v. Wright* requires both unavailability of the declarant and adequate indicia of reliability to be shown before admitting a doctor's statement under a hearsay exception. 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). Orelup's assertion is incorrect; the Court did not reach that issue: "[T]his case does not raise the question whether, before a child's out-of-court statements are admitted, the Confrontation Clause requires the prosecution to show that a child witness is unavailable at trial." *Wright*, 497 U.S. at 815–16, 110 S.Ct. at 3147, 111 L.Ed.2d at 652. Additionally, the South Dakota statute expressly says the statement is admissible regardless of the availability of the declarant.

■ Hearsay statements are admissible if they show an adequate indicia of reliability. *Wright*, 497 at 814–15, 110 S.Ct. at 3146, 111 L.Ed.2d at 652. Where the evidence falls within a firmly rooted hearsay exception, reliability can be inferred. *Id.; Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597, 608 (1990).

■ The medical diagnosis exception to hearsay is a "firmly rooted hearsay exception." The trial court did not abuse its discretion in allowing Dr. Oliver to testify about the statements made to him by four-year-old J.L. during a medical examination in the emergency room. Such testimony is admissible under the settled law of this

the combined statements conforms with an exception to the hearsay rule provided in §§ 19–16–5 to 19–16–35, inclusive.

**5.** SDCL 19–16–8 provides:
Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensation, or the inception or general character of the cause or external source thereof are not excluded by § 19–16–4 in so far as reasonably pertinent to diagnosis or treatment, even though the declarant is available as a witness.

state. *Olesen*, 443 N.W.2d at 9; *In re S.W.*, 428 N.W.2d 521, 523 (S.D.1988); *Bawdon*, 386 N.W.2d at 487. Statements of this kind are admissible when primarily concerned with what happened rather than who did it. *Id.* Here, the doctor's question was directed at what happened for purposes of medical diagnosis. When he asked the question, the doctor knew only that J.L. had a stomach ache or was bleeding. J.L. was not asked leading questions, nor was he asked to identify the person who had hurt him. The trial court did not err in admitting Dr. Oliver's testimony under the hearsay exception for medical diagnosis.

■ The medical diagnosis exception also applies to the portion of nurse Julie Larson's testimony concerning J.L.'s statements at school. J.L. told Larson his stomach hurt. After she asked if he had eaten, J.L. stated he had not eaten since noon the previous day because his father had put him "on restrictions." This information was imparted to her for the purposes of medical diagnosis. It was not error for the trial court to admit this part of her testimony.

### C.

■ Orelup also maintains the court erred in admitting the testimony of Marcia Cain and Robert Grass. The state contends their testimony was allowable under the excited utterance exception to hearsay. SDCL 19-16-6.[6] To fit within the exception, a hearsay statement must: (1) relate to a startling event or condition, and (2) be made by the declarant while under the stress of excitement caused by the event or condition. *Floody*, 481 N.W.2d at 250; *State v. Bult*, 351 N.W.2d 731, 735-36 (S.D. 1984). We have previously stated:

Lack of capacity for fabrication rather than lack of time to fabricate is the justi-

fication for this rule, and there is no pat answer as to the length of time that elapsed between the event and the utterance. "The character of the transaction or event will largely determine the significance of the time factor. *The crucial point is that the court must be able to find that the declarant's state at the time he made the declaration ruled out the possibility of conscious reflection."* (Emphasis added.)

*Bult*, 351 N.W.2d at 736 (citing Weinstein's Evidence, § 803(2)[01] at 803-84 (1981)).

The record does not indicate the trial court found J.L.'s statements were related to a startling event and made under the stress of excitement. Without such findings, the testimony of Robert Grass and Marcia Cain does not fit within this hearsay exception. It was error to admit their testimony.

The same findings by the trial court are necessary to admit the portion of nurse Julie Larson's testimony concerning J.L.'s statement when he discovered blood in the toilet. It was error to admit this part of Larson's testimony without first making the necessary determinations.

We do not reach the issue of whether J.L.'s retraction of his first statement to Deputy Grass would be fatal to admissibility under the excited utterance exception to hearsay. Upon retrial, the trial court should make that determination.

### II.

■ Orelup asserts the trial court's admission of testimony and photographs of J.L.'s bruises concerned bad acts evidence and was prejudicial. The two photographs do not show bruises on the abdomen at the site of the injury; they depict bruises on J.L.'s face, neck and back. Dr. Oliver's testimony indicated some bruises were "not accounted for by the kick." Nurse Larson

---

**6.** SDCL 19-16-6 provides:
   A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition, is not excluded by § 19-16-4, even though the declarant is available as a witness.

was allowed to testify about previous bruises on J.L. There was no testimony connecting the defendant to the origin of the bruises in the two photographs, nor to the previous bruises attested to by Larson. The trial judge admitted the Larson testimony regarding previous bruises to establish the "general and specific physical condition of the child during the time-frames in which the father had custody." He did not specify the grounds for admission of the photographs. Given the fact the source of the bruises was never explained, the testimony and the photographs were not relevant.

■ If the previous bruises evidence was admitted under the theory of bad acts, the trial court should have first performed a two-step analysis to determine admissibility. *In re R.S.S.,* 474 N.W.2d 743, 748 (S.D.1991). The trial court must: (1) determine the evidence is relevant to one of the listed exceptions, and (2) determine the probative value is not substantially outweighed by the prejudicial effect. *State v. Basker,* 468 N.W.2d 413, 415 n. 1 (S.D. 1991). "Additionally, it is crucially important that circuit court judges perform this probative-prejudicial balancing *on the record*." *State v. Eagle Hawk,* 411 N.W.2d 120, 126 (S.D.1987).

The judgment is reversed and remanded for a new trial.

MILLER, C.J., and HENDERSON, SABERS and AMUNDSON, JJ., concur.