STATE of South Dakota, Plaintiff and Appellee,

v.

John Francis MORIARTY, Defendant and Appellant.

No. 17900.

Supreme Court of South Dakota.

Considered on Briefs Jan. 13, 1993.

Decided June 2, 1993.

Mark Barnett, Atty. Gen., Charles D. McGuigan, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Rita Haverly Allen, Hagen, Wilka, Schreier & Archer, Sioux Falls, for defendant and appellant.

SABERS, Justice.

Defendant, John Francis Moriarty (Moriarty) appeals his conviction of rape in the second degree.

## FACTS

On an evening in early May, 1991, S.M.'s mother left for work leaving S.M., a girl age eight, and her two siblings under the care of S.M.'s stepfather, Moriarty. The mother had left Moriarty with instructions to wash S.M.'s hair that evening. According to S.M., when Moriarty took a bath that night, he asked S.M. to get into the bathtub with him. S.M. was required to wash Moriarty's chest, stomach, and erect penis. Moriarty rubbed S.M.'s vaginal area. The following day, S.M. told her mother that she had taken a bath with Moriarty. It was approximately five days later, however, when S.M. told her mother that she had been required to wash Moriarty and that his penis was "hard, ... gross." Because the mother did not think anything had happened, she did not pursue it further.

Later that month, S.M. told her babysitter, Leah DeWald (DeWald), that she had been anally raped by her stepfather, Moriarty. In explaining her allegations to DeWald, S.M. drew a number of pictures which DeWald kept. Two of the pictures were subsequently entered into evidence.

DeWald showed the pictures to a friend, Nicole Cummings, who told her mother, Candice Cummings (Cummings), a social worker with Family Services, about the pictures. DeWald showed the pictures to Cummings and the following morning, May 14, 1991, Cummings reported what she had learned to Protective Services, Department of Social Services.

When S.M. was interviewed by Amanda Loving (Loving), a social worker for Child Protection Services, she told Loving that she had been sodomized on at least two occasions by Moriarty and forced to engage in oral copulation. Dr. Brent Willman (Willman), a pediatrician at Central Plains Clinic, examined S.M. for physical evidence of vaginal penetration, sodomy and copulation. No physical evidence of rape was found.

On June 6, 1991, Moriarty was indicted by a Grand Jury on one count of Rape in the Second Degree. Following a three day jury trial, he was found guilty of rape in the second degree and sentenced to serve seventy-five years, with twenty-five suspended on the condition that he never reside with children under fifteen years of age.

Moriarty raises six issues on appeal.

1. Whether his confrontation clause rights were violated by the hearsay testimony of the babysitter, Leah DeWald.

2. Whether his confrontation clause rights were violated by the hearsay testimony of Candice Cummings.

3. Whether the testimony of Candice Cummings invaded the province of the jury.

4. Whether the prosecutor engaged in prosecutorial misconduct when questioning Dr. Willman in violation of Moriarty's confrontation clause rights.

5. Whether the prosecutor engaged in prosecutorial misconduct by securing the absences of S.M.'s family members during her testimony and then making reference to this absence in closing argument.

6. Whether the trial court abused its discretion in prohibiting Moriarty's expert from presenting testimony concerning the behavioral characteristics of a sexually abused child and in prohibiting the expert from presenting case specific testimony.

1. Hearsay testimony of DeWald.

■ Moriarty argues that his confrontation clause rights were violated by the hearsay testimony of the babysitter, Leah DeWald. Moriarty claims that even though DeWald's testimony constituted hearsay, she was not named in the State's Notice of Intent to Offer Hearsay Statements of Child Under Ten, nor was the requisite hearing to determine reliability conducted, and this violated his confrontation clause rights.

We review evidentiary rulings on the basis of abuse of discretion. "For us to disturb the evidentiary rulings of the circuit court, we must determine that an abuse of discretion has occurred. Once again, an abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence." *State v. DeVall,* 489 N.W.2d 371, 374 (S.D.1992) (citations omitted).

Initially, the State argues that Moriarty failed to object to the testimony of DeWald at trial[1] and the issue has not been preserved. This is incorrect. The trial court did not address his objection at the time DeWald testified. Later in the trial, however, the court acknowledged Moriarty's desire to object at the time of DeWald's testimony and allowed the objection to be made at that time as if it had been made at the time originally requested. Because the court had already allowed DeWald to testify, his ruling on the objection was clearly a denial.

Next, the State argues that the testimony of DeWald was admissible under SDCL 19–16–38. "Out-of-court statements by a minor sexual abuse victim are admissible at

trial, provided the provisions of SDCL 19–16–38[2] are met." *State v. Buller,* 484 N.W.2d 883, 885–86 (S.D.1992) (citations omitted). SDCL 19–16–38 requires notice by the proponent of the statement of intent to offer the statement and the particulars of it, and a hearing, outside the presence of the jury, where the court must find sufficient indicia of reliability.

The State argues that while DeWald was not named in State's Notice of Intent to Offer Hearsay Statements, Moriarty had sufficient notice. The only notice Moriarty received was that hearsay statements from DeWald would be offered into evidence if the declarant, S.M., was unavailable. Since S.M. testified at the trial she was available. Therefore, this "notice" could be characterized as "conditional" at best.

Additionally, the trial court failed to conduct a hearing outside the presence of the jury or "make a determination on the record prior to trial that sufficient indicia of reliability existed within the evidence presented" as required by SDCL 19–16–38. *Buller,* 484 N.W.2d at 887.

> [T]he confrontation clause requires a finding of sufficient indicia of reliability for the hearsay statements even if the declarant is available for cross-examination.

> .     .     .     .     .

> [T]he indicia of reliability requirement can be met in two ways: (1) where the statements fall within a firmly rooted hearsay exception or (2) where it is supported by a showing of particularized guarantees of trustworthiness. SDCL 19–16–38 is not a firmly rooted hearsay

1. Appellate counsel was not trial counsel.

2. SDCL 19–16–38 provides:

   A statement made by a child under the age of ten describing any act of sexual contact or rape performed with or on the child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings against the defendant or in any proceeding under chapter 26–8 in the courts of this state if:
   (1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

   (2) The child either:
       (a) Testifies at the proceedings; or
       (b) Is unavailable as a witness.
   However, if the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.
   No statement may be admitted under this section unless the proponent of the statement makes known his intention to offer the statement and the particulars of it, including the name and address of the declarant to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet the statement.

exception. Therefore, to satisfy the confrontation clause requirement, the statements must be supported by a showing of particularized guarantees of trustworthiness from the totality of the circumstances surrounding the making of the statements.

*Id.* (Citations omitted.)

The State argues that sufficient findings of reliability existed in the grand jury records. A grand jury proceeding, during which the defendant's presence is not allowed, is not a substitute for the statutorily mandated hearing, nor does it alone provide the requisite indicia of reliability. SDCL 19–16–38 is not a firmly rooted hearsay exception. The only way in which the indicia of reliability requirement could be met was by a showing of reliability. This was never done. Therefore, we must reverse on this issue unless this testimony was admissible as a prior consistent statement.

■ The State argues on appeal that DeWald's testimony was admissible as a prior consistent statement under SDCL 19–16–2(2).[3] "The admission or rejection of a prior consistent statement is within the sound discretion of the trial court and will not be disturbed except when there has been prejudicial abuse of discretion." *United States v. Red Feather,* 865 F.2d 169, 171 (8th Cir.1989) (citations omitted).

Before a prior consistent statement will qualify as nonhearsay under the rule, the proponent must demonstrate three things. First, he must show the prior consistent statement is consistent with the witness' in-court testimony. Second, he must establish that the statement is being used to rebut an express or implied charge against the witness of recent fabrication or improper motive or influence. Finally, the proponent must demonstrate that the prior consistent statement was made prior to the time the supposed motive to falsify arose. *State v. Thompson,* 379 N.W.2d 295, 296 (S.D.1985) (citation omitted); *DeVall,* 489 N.W.2d at 376 (citations omitted).

Moriarty does not claim that the testimony of DeWald was inconsistent with S.M.'s testimony on direct examination as in State v. Ager. ("Consistency of prior consistent statements does not require a verbatim recitation of the witness' testimony. What the test does require is that the prior consistent statement be compatible with, and not contradictory to, the witness' testimony." *State v. Ager,* 416 N.W.2d 871, 872–73 (S.D.1987)). Nor does he deny that he attempted to impeach S.M. during cross-examination with her grand jury testimony, a key issue in *State v. DeVall.* ("SDCL 19–16–2(2) requires impeachment of the witness as a precondition to admissibility." *DeVall,* 489 N.W.2d at 376 (citations omitted).) Therefore, the first and second conditions are met. Rather, Moriarty argues that the State failed the third condition of the test because S.M.'s motive to falsify arose as early as 1987, when Moriarty married S.M.'s mother. He claims the consistent statements were made after the motive to falsify arose, which makes them inadmissible as hearsay. *See State v. Younger,* 453 N.W.2d 834, 839 (S.D.1990) (alleged motive to falsify, which was fear of rapists' threats of further harm, arose contemporaneously with the rape, making all subsequent statements inadmissible hearsay and excluded).

According to Moriarty, S.M. was resentful of him in his role as the disciplining stepfather. In support, Moriarty claims S.M. advised her mother that she hated it when Moriarty spanked her and was glad he was out of the home. The State, as the proponent of the prior consistent statement, bears the burden of demonstrating

---

**3.** SDCL 19–16–2(2) provides:

A statement is not hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is

. . . .

(2) consistent with his testimony and is offered to rebut an express or implied charge

against him of recent fabrication or improper influence or motive[.]

"that the prior consistent statement was made prior to the time the supposed motive to falsify arose." *Thompson*, 379 N.W.2d at 296 (citation omitted). The trial court "made no attempt to determine if [S.M.] might have any motive to fabricate and to evaluate whether the statements were made before or after such improper motive arose." *State v. Carlson*, 392 N.W.2d 89, 91 (S.D.1986) (citation omitted). "This determination is better made at the time that the evidence is offered, or at a motion to suppress where the proper questions can be asked and the responses of the witnesses observed by the trial judge before admitting or suppressing the evidence." *Carlson*, 392 N.W.2d at 91–92 (citation omitted). ("Bolstering-type testimony of a neighbor of the alleged victim in a sexual abuse case was erroneously admitted when given prior to the testimony of the complainant, and without a determination by the trial court of whether the allegedly consistent statements were made before or after the complainant had a motive to fabricate." John W. Larson, South Dakota Evidence § 801.-2[1], at 552–53 (1991) (citing *Carlson*, 392 N.W.2d at 91–92).)

The trial court erred in admitting the testimony of DeWald without making the proper determination as to the basis for admission under SDCL 19–16–2(2). *Carlson*, 392 N.W.2d at 92.[4] Therefore, we reverse and remand on Issue 1.[5] The following issues are discussed to give guidance to the bench and bar on retrial.

2. Hearsay testimony of Cummings.

■ Candice Cummings, a social worker who specializes in working with victims of sexual assault, was allowed to testify, over objection, about a conversation with her daughter where she learned of S.M.'s allegations and the content of the pictures

drawn by S.M. Moriarty argues that Cummings' testimony violated his confrontation clause rights because she was not named in the Notice of Intent to Offer Hearsay Statements of Child Under Ten and the court did not make a finding as to whether the statements had sufficient indicia of reliability.

Following Moriarty's objection on hearsay grounds, the trial court gave an instruction limiting the purpose for which the evidence could be received. According to the trial court, the evidence could be received "for the limited purpose that—as a result of what her daughter said to her, what, if anything, she did, and for that purpose only."

Although the State could have easily avoided this problem by limiting the answer to the action taken, we fail to find an abuse of discretion. Because the purpose for which the jury could receive the testimony was limited, it was not received "in evidence to prove the truth of the matter asserted," SDCL 19–16–1(3), namely that S.M. had been raped by her stepfather. Therefore, it was not inadmissible hearsay. *United States v. Payne*, 944 F.2d 1458, 1472–73 (9th Cir.1991).

A review of Cummings' testimony concerning the two pictures drawn by S.M. also fails to indicate an abuse of discretion. Cummings' testimony merely identified the drawings that were brought to her by DeWald and what was depicted thereon. Because Cummings testimony did not go beyond identifying what was drawn on these two pictures that were then displayed to the jury, we find no abuse of discretion.

3. Cummings' testimony and the province of the jury.

■ Moriarty alleges that the State improperly called Cummings for the sole pur-

---

4. *See U.S. v. Miller*, 874 F.2d 1255 (9th Cir.1989) (Circuit Court, in concluding that any motive to fabricate at the time of the prior consistent statement was speculative, noted that District Court had allowed the prior consistent statement after determining that it was spontaneous and made before any motive to fabricate arose.)

5. In *State v. Logue*, "[t]he South Dakota Supreme Court ruled that on retrial, statements

made by a four-year-old male victim of sexual abuse to a social services worker could be admitted, per SDCL 19–16–2(2) (801(d)(1)(B)), as prior consistent statements to rebut an express or implied charge of recent fabrication, *provided the facts are developed to justify admission.*" John W. Larson, South Dakota Evidence § 801.-2[1], at 552 (1991) (emphasis added) (citing *State v. Logue*, 372 N.W.2d 151 (S.D.1985)).

pose of bolstering S.M.'s credibility, thereby invading the province of the jury. This court stated in *Buller* that:

[t]he trial court has broad discretion concerning the qualification of experts and the admission of expert testimony. The trial court's decision as to such matters will not be reversed on appeal absent a clear showing of abuse of that discretion.

484 N.W.2d at 888 (citation omitted).

The portion of Cummings' testimony which Moriarty claims resulted in an invasion of the province of the jury was when Cummings was asked what action she found it necessary to take based upon her discussion with her daughter and her friends and the pictures. Cummings responded that she felt it needed to be reported to Social Services. In support of his claim, Moriarty cites to *State v. Logue*, 372 N.W.2d 151 (S.D.1985). *Logue* found the admission of a social worker's opinion as to the source of a victim's sexual knowledge objectionable because it embraced the ultimate issue of fact and it lent an undue stamp of legitimacy to the testimony of the victim. *Id.* at 156–58.

Cummings' testimony was offered merely to show what she did after observing the drawings, the chain of events that led to the reporting of these allegations to Social Services. Cummings did not testify that the source of S.M.'s sexual knowledge was the rape by her stepfather as in *Logue*. We find no abuse of discretion in allowing the testimony of Cummings.

4. Questioning and testimony of Dr. Willman.

The trial court determined at the motions hearing that the doctor should be cautioned not to reveal the identity of the person who S.M. claimed abused her. Despite that caution, the prosecutor asked Dr Willman at trial: "Now, let me ask you this, *without identifying who,* was [S.M.] able to identity the person that had sexually abused her?" Dr. Willman responded "Yes. She said her stepfather." Despite this response by Dr. Willman, Moriarty did not object or move to strike the response. Shortly thereafter, the prosecutor asked:

"Did [S.M.] describe to you any instances of any type of sexual abuse *with her [step]father?* " Moriarty argues that this subsequent question, which Moriarty did not object to, nor move to strike, violated the Court's motion in limine and was prejudicial within the plain error rule.

■ We will not review a matter on appeal unless proper objections were made before the trial court. *State v. Wall*, 481 N.W.2d 259, 265 (S.D.1992) (citations omitted). Errors or defects, however, affecting substantial rights, may be noticed although they were not brought to the attention of the court. SDCL 23A–44–15, *Wall*, 481 N.W.2d at 265. "However, we employ this rule only in exceptional cases, and then, it is employed cautiously; the rule does not encompass every error which occurs at trial, but only those errors which are both obvious and substantial." *Id.* (Citation omitted.)

No hard and fast rules exist which state with certainty when prosecutorial misconduct reaches a level of prejudicial error which demands reversal of the conviction and a new trial; each case must be decided on its own facts.

*Id.* (citations omitted).

■ Although this prosecutorial misconduct does not rise to the level of prejudicial or plain error, it comes close. The substance of Dr. Willman's testimony was that no physical evidence of rape was found. In view of the trial court's pretrial caution, the prosecutor should not have asked *any* questions pertaining to identity, much less the follow-up question concerning "instances of sexual abuse with her [step]father." This was clearly an attempt to solicit prohibited hearsay. No prejudicial answer, however, was forthcoming as identity was never in issue in the case. *See Payne*, 944 F.2d at 1473 (hearsay testimony regarding the identity of the defendant held harmless where defendant's identity and victim's identification of defendant as her molester were not seriously in issue).

■ Moriarty further argues that the testimony of Dr. Willman violated his confrontation clause rights. Dr. Willman's

testimony falls generally within a firmly rooted hearsay exception.

Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensation, or the inception or general character of the cause or external source thereof are not excluded by § 19–16–4 in so far as reasonably pertinent to diagnosis or treatment, even though the declarant is available as a witness.

SDCL 19–16–8; *State v. Orelup*, 492 N.W.2d 101, 105 (S.D.1992). Therefore, since some of these hearsay statements were reasonably pertinent to diagnosis or treatment, they were admissible. See *Orelup*, 492 N.W.2d at 106. "Statements of this kind are admissible when primarily concerned with what happened rather than who did it." *Id.* (citations omitted).

5. Prosecutorial misconduct during closing argument.

■ Moriarty contends that the prosecutor's statement during closing argument that "there hasn't been one single person in [S.M.'s] family that stood behind her [or] walked shoulder to shoulder with her here in court" constituted prosecutorial misconduct because it was the prosecutor's own subpoenas that kept the mother and the grandparents out of the courtroom. While Moriarty admits that he did not object to the State's closing argument, he contends that the conduct and comment constituted prejudicial error, affecting his substantial rights and should, therefore, be noticed by this court under the plain error rule. SDCL 23A–44–15.

"We have recognized the plain error rule, but only in exceptional cases, and then it must be applied cautiously. The rule does not encompass every error that occurs at trial, but only those errors which are both obvious and substantial." *State v. Shepley*, 440 N.W.2d 294, 298 (S.D.1989) (citations omitted). This statement by the prosecutor was improper. Particularly in light of the fact that his own subpoenas kept the family sequestered. Even though we do not encourage this type of conduct, we do not find the prosecutor's misconduct suffi-

ciently prejudicial to rise to the level of plain error. *See Id.* at 297 (improper statements made by assistant state's attorney during closing arguments did not deprive defendant of his right to a fair trial.) Despite misconduct, defense counsel must remain attentive to his task. He should object and move to strike. If unsuccessful, he may need to move for a mistrial as required in *Shepley*. *Id.* at 298. Additionally, we have already granted a new trial and there is no reason to grant a second one.

6. Prohibition of testimony by Moriarty's expert.

■ Finally, Moriarty argues that the trial court abused its discretion when it prohibited testimony from his expert, Dr. Underwager, a licensed consulting psychologist and the director of the "Institute for Psychological Therapies" in Northfield, Minnesota.

While Dr. Underwager was allowed to testify as to the difference between learned and cognitive memory, he was prohibited from presenting testimony concerning the behavioral characteristics of a sexually abused child and giving case-specific testimony. The trial court made this ruling after hearing Dr. Underwager's potential testimony out of the presence of the jury. The trial court prohibited this testimony because of concern that it would reach the ultimate issue, whether S.M. had been raped by her stepfather, thereby invading the province of the jury.

"A trial court's decision regarding the qualification of experts and the admission of their testimony will only be reversed upon a showing of an abuse of discretion." *State v. Spaans*, 455 N.W.2d 596, 598–99 (S.D.1990) (citation omitted). In admitting expert testimony, the determining factor is "whether it would assist the jury in understanding matters that normally would not lie within a layman's breadth of knowledge." *State v. Bachman*, 446 N.W.2d 271, 275 (S.D.1989).

The *Spaans* Court held that the trial court did not abuse its discretion in allow-

ing the State's expert to testify when the testimony "only briefly discussed the general characteristics of sexually abused children." *Spaans*, 455 N.W.2d at 599. The testimony in *Spaans* remained general and did not go directly to the ultimate issue of credibility. "The jury was left to draw its own conclusions about whether the behavior of the children fit these characteristics, and, if so, whether it was caused by ... sexual abuse." *Id. See also Bachman*, 446 N.W.2d at 275, where a sharply divided court upheld the decision by the trial court allowing the experts to testify, the majority noting that the experts simply shared their knowledge with the jury and neither expert testified as to the ultimate issue, that the children had been molested by the defendant or that they were telling the truth.

While it was not an abuse of discretion for the trial court to prohibit case-specific testimony if such testimony would have reached the ultimate issue, it is questionable whether knowledge of the behavioral characteristics of sexually abused children lies within a "layman's breadth of knowledge." Therefore, it may have been an abuse of discretion to prohibit testimony by the expert in this area. Because we reverse and remand on Issue One, we caution the trial judge to review the cases carefully, especially *McCafferty v. Solem*, 449 N.W.2d 590 (S.D.1989), and related rulings. On remand, the trial court is instructed to use his discretion in conducting this portion of the trial in light of this discussion, providing Moriarty with the same opportunities in his presentation of expert testimony that we have afforded the State under similar circumstances.

MILLER, C.J., and AMUNDSON, J., concur.

WUEST, J., concurs specially.

HENDERSON, J., concurs in result.

WUEST, Justice (concurring specially).

I join the majority opinion on Issue 1 and therefore vote to reverse. I express no opinion on the other issues discussed in the majority opinion.

HENDERSON, Justice (concurring in result).

With issue 1, I outright concur. There being a reversal of this conviction on issue 1, my concern for the treatment of issues 2, 3, 4, 5, and 6 would be mooted, were it not for the fact that those issues are all treated, in full, to apparently give guidance to the Bench and Bar upon retrial.

On issue 2, I disagree that the hearsay testimony of Candice Cummings did not violate Moriarty's confrontation clause rights. Essentially, I disagree because Candice Cummings testified concerning what her child had told her, about something two other children said, regarding what S.M. had said Moriarty was doing to S.M. This is too much hearsay for me to swallow! As lawyers and judges, we cannot tolerate this kind of evidence. Particularly disturbing is that Candice Cummings never, at any time, interviewed S.M. This testimony violated Moriarty's rights as set forth in *Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). Such type of hearsay upon hearsay evidence also violates our holdings in *State v. Buller*, 484 N.W.2d 883 (S.D.1992); *State v. Floody*, 481 N.W.2d 242 (S.D.1992); and *Matter of R.S.S.*, 474 N.W.2d 743 (S.D. 1991).

On issue 3, the testimony of Candice Cummings invaded the province of the jury and also Moriarty's rights under the confrontation clause. Cummings was permitted to testify and explain that which she perceived was contained in certain pictures drawn by S.M. During this phase of the testimony, Candice Cummings testified that based upon her perception of these pictures, she had to report this scenario to Protective Services. This testimony might possibly have survived had not the prosecutor made an opening statement which assumed facts which should not be placed in evidence. These remarks included: "And she [Candice Cummings] works primarily in her field as a social worker with victims of sexual crimes, sexual abuse victims both adult and children. *And she knew what the pictures meant.*" (Emphasis added). The purpose of the opening argument advo-

cacy, joined with the picture testimony, was calculated to bolster credibility of S.M.'s statements to three tiny girls. Remember, this germane fact: Candice Cummings never interviewed S.M. Permitting this hearsay upon hearsay evidence was an abuse of discretion. *State v. Bawdon,* 386 N.W.2d 484, 486 (S.D.1986).

I also disagree on the treatment of issue 4 concerning the testimony of Dr. Willman. In all fairness to the trial judge, his ruling was specific in that testimony could be elicited as to whether the child had sexual abuse characteristics but Dr. Willman could not say by whom the characteristics were perpetrated. Notwithstanding, Dr. Willman testified: "Yes, she said her stepfather." Therefore, the witness violated the trial judge's order. It is true that, initially, the prosecutor attempted to abide by the trial judge's order. However, the prosecutor plunged onward asking several questions to try to get the witness to identify Moriarty as the perpetrator. Finally, the prosecutor asked Dr. Willman: "Did [S.M.] describe to you any instance of any type of sexual abuse with her [step]father?" Thereupon, Dr. Willman identified Moriarty. The prosecutor knew better. He wanted to win the case. And he elevated winning over playing by fair rules. This Court has taken the position oft-over that a trial judge's orders concerning the conduct of a trial must be obeyed. *State v. Gage,* 302 N.W.2d 793 (S.D.1981). Direct violation of a trial court's order is "contemptible and inexcusable." *Id.* This prosecutorial conduct was misconduct to such extent that there exists prejudicial error requiring reversal of the conviction and a new trial. A plain error is one which must be both "obvious" and "substantive" to come within its ambit. *People In Interest of R.R.,* 447 N.W.2d 922, 927 (S.D.1989) (citing *State v. Dornbusch,* 384 N.W.2d 682 (S.D.1986)). The plain error rule, SDCL 23A–44–15 should be applied.

The prosecutor's closing argument was ethically rank. It was so bad that the jury sent a note, after deliberation, as follows: "Could the mother have been present when [S.M.] was on the stand?" As the majority has detailed, it was the prosecutor who kept the mother and the grandparents out of the courtroom. This was all a ploy to engage in improper methods, calculated to produce an unlawful conviction. We cannot tolerate such type of conduct. *State v. Blaine,* 427 N.W.2d 113 (S.D.1988). I would invoke the plain error rule. SDCL 23A–44–15; *State v. Brammer,* 304 N.W.2d 111 (S.D.1981). I would suggest that defense counsel in this state sharpen up their legal practice by reading *State v. Kidd,* 286 N.W.2d 120, 123 (S.D.1979) (Henderson, J., concurring specially) as well as *State v. Handy,* 450 N.W.2d 434 (S.D.1990). In other words, trial counsel make a proper record and not hope that the plain error rule will be invoked. Hope might not succeed at the appellate level but a good record will, providing the error is "obvious" and "substantial."